THOMAS STOELTING, PLAINTIFF-RESPONDENT, v. SAN-
DRA HAUCK, AN INFANT, ANTHONY M. HAUCK, JR.,
AND VIRGINIA HAUCK, DEFENDANTS-APPELLANTS.

Argued January 12, 1960—Decided March 21, 1960.

88

90

———

*Mr. C. Ryman Herr, Jr.,* argued the cause for the defendant-appellant, Sandra Hauck, an infant (*Messrs. Herr & Fisher,* attorneys).

*Mr. Allen C. Mathias* argued the cause for the defendants-appellants, Anthony M. Hauck, Jr., and Virginia Hauck (*Messrs. Smith, James and Mathias,* attorneys).

*Mr. Jules B. St. Germain,* of the New York Bar, argued the cause for the plaintiff-respondent, Thomas Stoelting (*Mr. Joseph D. Maher,* attorney).

The opinion of the court was delivered by

PROCTOR, J. Sometime between one and two o'clock in the morning of April 3, 1957, Sandra Hauck, 15½ years old, shot and severely injured Thomas Stoelting with a .45-calibre automatic pistol.

Stoelting sued Sandra and her parents, Virginia and Anthony Hauck, Jr. In his amended complaint, he charged Sandra with negligence in firing the gun, and her parents with negligence in supervising their daughter and in permitting the gun to remain in a place accessible to her. He also charged the defendants with violations of *N. J. S.* 2A:151–10 and 11, which outlaw furnishing to and use by minors of Sandra's age of firearms in certain circumstances.

All of the defendants denied negligence and asserted the affirmative defenses of contributory negligence and assumption of risk. At the conclusion of the defendants' case, the trial judge removed the affirmative defenses from the jury's consideration on the ground there was insufficient evidence to support them. The jury returned a verdict of $100,000 for the plaintiff, against all three defendants, and judg-

ment was entered thereon. On appeal, the judgment was affirmed by the Appellate Division, 56 *N. J. Super.* 386 (1959), and we granted certification. 30 *N. J.* 564 (1959).

The evidence at the trial showed that Stoelting was a mining engineer, 52 years old when he was shot. He was joined with the defendant, Anthony Hauck, Jr., one Rolf Meuer, and others in a speculative mining venture. He was married, but separated from his wife. For some six years prior to the shooting Stoelting stayed as a guest in the Hauck home on numerous occasions and often for extended periods of time. During the six months before the shooting, he stayed there one or two nights a week.

On the evening of April 2, 1957, there was a business conference at the Hauck home. Afterwards, Stoelting and Anthony Hauck, Jr., had a conversation in the dining room on the first floor. During the conversation, Stoelting said (of his wife, according to his testimony), "She has had her last chance to save her neck." Sandra had already gone up to her bedroom on the second floor, but she apparently overheard Stoelting's remark, and interpreted it as a threat to her mother. At about one o'clock, Stoelting and Hauck went upstairs to the bedroom they shared, and retired to their separate beds. Sandra, according to her answers to interrogatories which were read to the jury, took a gun from an unlocked desk in her room, thinking it unloaded. She entered the room occupied by Stoelting and her father, and walked to the foot of Stoelting's bed. She asked him whether he had been talking about her mother. Before he answered she "pulled the gun up in order to frighten him and it suddenly went off." At the trial she testified to the same effect.

Stoelting testified that he had fallen asleep and awoke to hear Hauck say, "Tom, were we not talking about Georgia [Stoelting's wife]?" After Stoelting's affirmative reply, Hauck went on, "Sandra thinks we were talking about Jean [Virginia Hauck]." Stoelting testified that he turned and saw Sandra standing at the foot of his bed with a gun in

her hand. She said "Thomas Stoelting, I am going to kill you now." As Hauck shouted, "don't shoot," the gun discharged a bullet that hit Stoelting in the abdomen. Sandra ran from the room screaming "I'm sorry, I'm sorry."

The gun Sandra used belonged to Rolf Meuer, who first came to the Hauck home in March 1956, and stayed there on occasion up to and including the date of the shooting. Stoelting originally owned the gun and had given it to Meuer in 1953. When Meuer first came to the Hauck household, he brought it with him, and left it loaded in the unlocked desk from which Sandra took it over a year later. The Haucks were aware of its presence in the house, and Virginia Hauck knew it was in the unlocked desk for at least five months before the shooting. She removed it from the desk on Fridays, when a maid came from Clinton Reformatory to work in the house.

Sandra had fired only one shot from Meuer's pistol before April 3, 1957. This was under supervision at a firing range during the summer of 1956, and was known by her parents. The evening before that occasion, Sandra handled Meuer's gun, and others, at home in the presence of her parents, Stoelting, and Meuer.

Stoelting testified that the Haucks knew their daughter sometimes played with Meuer's pistol. He said that in August 1956 he saw Sandra coming through the Hauck kitchen wearing the gun in a holster. He immediately told her mother, Virginia Hauck, that it was "very foolish" to let Sandra play with it. She replied that Sandra "knows what she is doing." Stoelting further testified that several weeks later he saw Sandra coming downstairs with the weapon, and that as she passed him she pulled it out of its holster, making a "quick draw." He asked her if the gun was loaded. She answered, "yes," and walked into the kitchen where her mother was. Stoelting called after her, "Put this thing down, it is very foolish, dangerous." When he complained to Mrs Hauck, she told him to talk to her husband. That evening he told Hauck of the episode, and

Hauck replied that Sandra was not foolish with weapons and knew how to handle them. However, Sandra's answers to interrogatories, which were read in evidence, revealed that she was never given instruction in the handling of pistols.

The plaintiff introduced in evidence two photographs, one of Sandra taking Meuer's picture while she was wearing a hip holster and revolver, and the other of Sandra posing with a pointed weapon. The jury could have found that the photographs were taken by Anthony Hauck with his own camera in the rear yard of his home.

The elder Haucks denied knowledge of these photographs. They also denied that Stoelting had warned them of their daughter's activities with guns, or that they had any other knowledge that would have put them on notice that the accessibility of the .45 automatic pistol would create a condition dangerous to others.

■■ The adult defendants urge on this appeal that there was insufficient evidence of negligence on their part to submit to the jury. Under the evidence before them, the jury could have found that the adult defendants, who had parental control over Sandra, were negligent in permitting her access to the gun, knowing she had virtually no experience or instruction in safely handling guns, and having been warned of her attraction to them and her brandishing them about the house. See 2 *Restatement, Torts,* § 308 (1934).

The risk created by the adult defendants, in allowing Sandra access to the gun, extended beyond her possible misuse of it at play. There was also the danger that the accessibility of the gun would render highly dangerous a rash, emotionally immature act on Sandra's part. We need not consider what duty of care to protect others is imposed on parents by the availability to children in the household of instrumentalities of potential harm, such as poisons, knives, and the like. But firearms are so inherently dangerous and so magnetic to the young that a person of ordinary prudence in the exercise of reasonable care will take cautious preventive measures commensurate with the great harm that

may ensue from the use of the gun by someone unfit to be entrusted with it. As Justice Burling said in *Mazzilli v. Selger,* 13 *N. J.* 296, at *pages* 300 and 301 (1953), where this court held it to be a jury question whether a mother who permitted her minor son access to a shotgun in the house was liable to an adult whom he intentionally shot:

> "Firearms have been a subject of legislative control, which indicates a recognition of damage which may ensue from the use of a dangerous instrument, especially in incompetent or unqualified hands. [Citing *N. J. S.* 2A:151–10 and 11] * * *
>
> * * * * * * * *
>
> The duty in the present case is to be found in the principle that one has a duty not to permit a third person to 'use a thing or engage in an activity *which is under the control of the actor,* if the actor knows or should know that such person intends or is likely to use the thing or conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others' (emphasis supplied). *Restatement of the Law, Torts (Negligence)* (1934), *sec.* 308."

We therefore conclude there was sufficient evidence for the jury to say whether the adult defendants were negligent in their supervision of Sandra, and in permitting the gun to be kept in an unlocked desk in her bedroom, and whether Sandra's conduct was what a prudent person would reasonably expect that a girl of her age might do as a result of such negligence. See *Mazzilli v. Selger, supra,* at *page* 304.

All of the defendants next focus their attack on the ruling of the trial judge denying them the opportunity to bring before the jury evidence which they contend would establish contributory negligence and assumption of risk on the part of the plaintiff. They assert that this evidence would show that, for some time before the shooting, Stoelting had illicit relations with Sandra and threatened to harm her or her parents if she revealed these relations to them. In their answers to the amended complaint and in the pretrial order, the defendants asserted that the plaintiff was contributorily negligent and assumed the risk of his injury. In the pretrial order, the infant defendant alleged

that at the time of the shooting she was in a highly emotional state which precluded the exercise of due care and that she had "an intent to use the gun solely to scare or frighten the plaintiff." She further contended

"that the discharge of the weapon under the circumstances was the natural end result of a long chain of occurrences and circumstances over a period of two or three years preceding the occurrence and arose out of the plaintiff's relations with this defendant, which were against her will and which were beyond her control, and that whatever happened was an involuntary, emotional, nervous reaction never experienced by her before, not foreseeable by her nor preventable by her through the exercise of care, caution and prudence. Sandra further contends that the plaintiff, Thomas Stoelting, was guilty of contributory negligence and assumption of risk, in that his actions toward her, both physical and mental, were the sole cause of the mental state or condition in which she was at the time the weapon was discharged and that his threats to her concerning herself and her mother were the sole proximate cause of her having the weapon in her hands at the time; that Thomas Stoelting knew, or should have known as a reasonable person, that the inevitable result of his conduct to this defendant was to drive her temporarily insane and to make her not responsible for her actions toward him."

The adult defendants contended, *inter alia,* that Sandra was an independent intervening agency, whose negligence was not foreseeable by them. "[T]hey likewise allege his contributory negligence and assumption of the risk."

About two weeks after the pretrial conference, Stoelting served the defendants with supplemental interrogatories in which he inquired into the factual basis of their defenses of contributory negligence and assumption of risk. In their answers the defendants set out their allegations that between September 1955 and May 1956 Stoelting "physically and mentally assaulted" Sandra, in an automobile, in and about her home, and in a nearby barn or out-building. His alleged assaults occurred "two, three or four times a week," and consisted of having sexual intercourse with her, striking her, attempting to indulge in unnatural sex acts with her, and threatening to beat and injure her and to kill her parents if she told them about his actions. It was also alleged that "[d]uring the same period of time and there-

after * * * he applied and supplied to this defendant various drugs * * * which further destroyed the emotional and mental capacity of the defendant, Sandra Hauck, making it impossible for her to resist"; and that he continued to "mentally abuse, coerce and threaten" Sandra up to the date of the shooting. The cumulative effect of Stoelting's actions was alleged to be such that

"coupled with the threat of the plaintiff which she had heard that evening, it disturbed her mentally and emotionally to such a degree that she has no recollection of pulling the trigger or causing the gun to be discharged, although she did intend to scare him, and such mental state as she was in was a true and proximate result of the conduct of the plaintiff to the defendant, Sandra Hauck, during the entire period from September 20, 1955 to April 3, 1957."

At the outset of the trial the judge ruled that counsel should refrain from mentioning Stoelting's alleged conduct in their openings to the jury, because he did not consider that it had any bearing on the issues of contributory negligence and assumption of risk. Later, during the cross-examination of Stoelting, defendants' counsel attempted to question him about the alleged conduct. The court asked defendants' counsel out of the hearing of the jury to state what his cross-examination would encompass, to which he replied:

"I would like to cross-examine this plaintiff upon incidents which happened within approximately a two year period prior to the day of the shooting. I want to ask him if he carnally abused this girl, if he handled her private parts, if he had intercourse with her of her own volition or by force, whether he applied drugs to her body, whether he supplied her with charms which were drilled out with drugs in them, whether he threatened her over a period of time concerning these relations, whether he threatened to kill her or kill her parents if she told of these relations and whether or not he had since—strike the 'since,'—whether he had within a month or so of the day of the shooting repeated his threats to her that, 'I will harm or kill your mother if you do not do what I want you to do.' "

The trial judge refused to allow counsel to cross-examine Stoelting as to these matters on the ground "that these

allegations are not relevant to the issues framed by the pleadings and by the pretrial order in this case." He then stated that he assumed the defendants would offer to prove the same allegations on their own case, and instead of having counsel make the offer at the later time, he then denied it.

The defendants' argument before the Appellate Division for their attempt to cross-examine Stoelting and offer proof as to his prior relations with Sandra was that the evidence had bearing, first, upon the plaintiff's alleged contributory negligence and assumption of risk and, second, upon the issue of the adult defendants' duty reasonably to foresee and therefore to act to prevent the shooting. The Appellate Division did not consider the second ground as it was not advanced before the trial court. For the same reason we will not consider that ground as a cause for reversal on the appeal here, although, as the case must be remanded for a new trial for the reasons presently to be stated, that matter will be considered later in this opinion.

In approving the trial court's ruling the Appellate Division observed that it was not based on the limits of the pretrial order, but rather on the conclusion that the proffered evidence had no factual relevance to the defenses of contributory negligence and assumption of risk, "or, possibly, only such remote relevance as not to warrant bringing into the case the heavy element of prejudice against the plaintiff which such evidence might entrain." The Appellate Division treated the trial court's ruling as a discretionary one, by which the probative values of the offered evidence were weighed against the danger of prejudice to the plaintiff attendant upon its introduction. It observed that the defendants offered no proof to sustain their charge that Sandra was in a highly emotional state at the time of the shooting as a result of her alleged prior experiences with Stoelting, and concluded that an inference by the jury of such a condition would not have been permissible from the proof offered by the defendants. It further stated that

"[t]he most probable explanation of her motivation in going into his bedroom with the gun was her having overheard what she interpreted as a threat by him to her mother. This does not appear in any way associated with or related to anything which may have transpired between plaintiff and Sandra more than eleven months previously."

The Appellate Division concluded that the ruling denying the cross-examination and offer of proof was "well-advised, and, in any event, not shown to have been prejudicial."

In support of the rulings below, the plaintiff argues before us that the proposed cross-examination and proof were properly excluded because (1) not within the issues as framed by the pretrial order, and (2) so tenuously related to the defenses raised that its relevance is far outweighed by the prejudice that would accompany its introduction.

As to the plaintiff's first argument, it is clear that the issues of contributory negligence and assumption of risk were raised in the pretrial order. In addition to the order's statement of the defendants' contentions as to these defenses, quoted earlier in this opinion, its statement of the "Issues" includes the following:

"Contributory negligence and assumption of risk of the plaintiff arising from his knowledge of the accessibility of the gun to the infant, of the fact that she had used it on prior occasions; contributory negligence and assumption of risk by reason of the alleged emotional disturbance of the infant allegedly originating in the prior relations between the plaintiff and the infant defendant."

We believe that the pretrial order fairly apprised the plaintiff that his alleged misconduct with Sandra would be made an issue at the trial, and that he would be charged with contributing to his own injury by remaining in the Hauck household with knowledge of the effect his alleged misconduct might have upon the infant, and with knowledge of her attraction to a deadly weapon to which she had access.

As to the plaintiff's second argument, we believe that the defendants' proposed cross-examination and offer

of proof had relevance to the defenses of contributory negligence and assumption of risk that far outweighed the possibly attendant prejudice to the plaintiff, and that it was error for the trial judge to exclude them.

The defense of assumption of risk was raised by the defendants in its "secondary sense," as a phase of their affirmative defense of contributory negligence, for in legal contemplation they charged that the plaintiff failed to use the care of a reasonably prudent man in all the circumstances either in incurring a known risk or in the manner in which he proceeded in the face of that risk. See *Meistrich v. Casino Arena Attractions, Inc.*, 31 *N. J.* 44, at *page* 55 (1959), and 2 *Harper & James, Torts,* § 21.7–8 (1956). Contributory negligence is conduct on the part of the plaintiff that involves an unreasonable risk of harm to him and contributes as a legal cause to his injury. But in order to bar recovery, the unreasonableness of the plaintiff's conduct must have been in its tendency to expose him to the particular risk from which his injury resulted. See *Harper & James, supra,* § 22.10; *Prosser, Torts,* 286 (*2d ed.* 1955); 2 *Restatement, Torts,* § 468 (1934). Thus, a worker, injured by the collapse of a wall on a platform forbidden to him for a reason other than the unsafety of the wall, is not barred, since his negligence did not extend to the risk of a falling wall. *Smithwick v. Hall & Upson Co.*, 59 *Conn.* 261, 21 *A.* 924, 12 *L. R. A.* 279 (*Sup. Ct. Err.* 1890). So, also, one who drives at excessive speed is not contributorily negligent when injured by a tree falling on his vehicle, as the risks to which the driver knowingly exposed himself by his excessive speed did not include fortuitous arrival at a place at which a tree happened to fall. *Berry v. Borough of Sugar Notch*, 191 *Pa.* 345, 43 *A.* 240 (*Sup. Ct.* 1899). Whether this rule be put in terms of causal connection or foreseeability, the fact is that a man injured by one agency is not denied recovery for his failure to guard himself against potential harm from another, entirely unrelated, agency.

The plaintiff argues that this is "a negligence action, pure and simple," and that no matter what his previous conduct with Sandra was, it did not unreasonably expose him to the risk of Sandra's careless use of a firearm. We believe the plaintiff misses the essential question—what was the risk he ran by conducting himself in the manner alleged by the defendants?

If the plaintiff had been hit by a bullet that Sandra accidentally fired while she was practicing "quick draws" in the next room, his previous relations with her might have nothing to do with the cause of his injury. But this case is not so simple. Stoelting's injury, the defendants claim, did not result from an isolated, unmotivated, careless act, but rather from the danger inherent in an emotionally upset young girl's effort to frighten him with a deadly weapon she did not know how to handle safely. The first question, therefore, is whether by his presence in the house and his alleged previous conduct Stoelting unreasonably ran the risk that Sandra would have a violent emotional reaction directed against him, and that her reaction would be made highly dangerous to him by the use of a gun to which he knew she had easy access. The second question is whether his injury was the result of his unreasonably exposing himself to that risk.

We believe that if the proffered evidence had been admitted the jury could have found that Stoelting, as a reasonably prudent man, should not have continued to remain in a household that contained a girl in her early teens whom he had repeatedly violated, supplied with drugs, and threatened, as little as a month before he was shot, with harm or death to herself or her parents if she revealed his actions, especially in view of her known access and attraction to firearms. We also believe that the jury could have found that Stoelting's voluntary self-exposure to that risk was a contributing cause of his injury. The fact that the shooting may have been precipitated by Sandra's misunderstanding of an innocent remark made by Stoelting

does not necessarily break the causal connection between his alleged conduct and his injuries. The jury could believe that such a misunderstanding would not have arisen at all, or at least not have driven the young girl to the drastic action of an armed assault, had it not been set against the background of Stoelting's previous conduct with her.

There is no doubt that it is generally within the discretion of the trial court to exclude remotely relevant evidence whose probative value is offset by the danger of undue prejudice, unfair surprise, undue consumption of trial time, or the possible confusion of issues attendant on the introduction of collateral matters. *Iverson v. Prudential Ins. Co.*, 126 *N. J. L.* 280 (*E. & A.* 1941) ; *Dolan v. Newark Iron & Metal Co.*, 18 *N. J. Super.* 450 (*App. Div.* 1952). See *McCormick, Evidence,* § 152 (1954). This discretion to exclude evidence should be exercised, however, only where its probative value is clearly outweighed by the dangers its introduction would create. The search for truth is ordinarily best served by the fullest disclosure of relevant facts and circumstances, *In re Richardson,* 31 *N. J.* 391 (1960), and any evidence which would aid the jury in that search, unless some specific rule forbids it, should ordinarily be admitted. As was said by Justice Wachenfeld for this Court in *Miller v. Trans Oil Co.,* 18 *N. J.* 407, at *page* 413 (1955) :

"Justice and common sense, fused by enlightened reasoning, engender a legal philosophy embodying the abolition of all obstacles having a tendency to deprive the jury of any facts, however remotely relevant or from whatever source, which gravitate toward assisting them in arriving at a correct solution of the factual equation confronting them. Intellectual productiveness is not increased nor is the truth maintained by withholding circumstances which may shed some helpful light."

We have concluded that if a jury were to believe the evidence of the plaintiff's alleged conduct it could determine that the plaintiff in continuing to remain in an area of known danger was unreasonably careless of his own safety. His conduct, therefore, is not a collateral issue. The

relevance of his conduct may be considered "remote" only in the matter of time, *i. e.,* in that the alleged physical relationship ended some eleven months before the shooting. But the defendants offered to prove that the plaintiff threatened Sandra with harm to herself and her mother about a month before the shooting. The extended time pattern alleged may be considered by the jury, but it is not such that the circumstances should be removed entirely from their consideration.

The real danger the plaintiff sought to avoid by the exclusion of the proffered evidence is that the jury might disregard the issues of the case and base their verdict on their reaction to the picture that evidence might portray of the plaintiff's character. We must assume, until in a particular case the contrary be shown, that every jury will base their verdict strictly on the merits of the case before them. See *State v. Collins,* 2 *N. J.* 406, at *page* 411 (1949). That assumption is the basic justification of fact-finding by jury—one of the peculiar excellences of our legal system. As we have said above, all relevant matter not barred by a specific rule of evidence should be considered by the jury unless its probative value is clearly outweighed by its tendency to divert the jury from their fair determination of the issues properly before them. Here the proffered evidence is a vital part of the defendants' case. Indeed, if believed, it would show that Stoelting had far greater knowledge than the elder Haucks of the dangerous atmosphere that enveloped him. Its probative value is shown by the fact that the trial judge, having excluded it, then felt bound to take the issues of contributory negligence and assumption of risk away from the jury. Had that evidence been admitted and believed, the jury could reasonably have found against the plaintiff on the ground that his remaining in the Hauck household in the circumstances was imprudent and was a contributing cause of his injury. Evidence so central to the legitimate issues in a case cannot be excluded for fear that it might put one of the parties in a bad light

before the jury. "That evidence is shrouded with unsavory implications is no reason for exclusion when it is a significant part of the proof." *State v. West,* 29 *N. J.* 327, at *page* 335 (1959). See *In re Vince,* 2 *N. J.* 443, at *page* 457 (1949). We therefore must conclude that the trial judge in excluding the proffered evidence mistakenly exercised his discretion.

The plaintiff also raises the question of the effect of *N. J. S.* 2A:151–10 and 11. He argues that violation by Sandra and her parents of those criminal provisions creates an absolute liability on their part, and excludes the defenses of contributory negligence and assumption of risk. The Appellate Division stated that if there were a statutory violation, it was committed only by Sandra, and not by her parents, but it doubted the "continued viability" of the provision she allegedly violated because of the effect of *N. J. S.* 2A:85–4, which deems persons under the age of 16 incapable of committing crime. The Appellate Division declined to pass on these questions, because they were not briefed or argued there.

We need not consider whether *N. J. S.* 2A:151–11 has been impliedly repealed by *N. J. S.* 2A:85–4, or whether Sandra or her parents were guilty of any statutory violations. The greatest effect the cited provisions could have would be as evidence for the jury of a legislatively-determined standard of conduct. See *Rappaport v. Nichols,* 31 *N. J.* 188, at *page* 201 (1959), and *Evers v. Davis,* 86 *N. J. L.* 196 (*E. & A.* 1914). The defenses of contributory negligence and assumption of risk are available to defendants in cases of violations of these standards. See *McNamara v. Mechanics' Trust Co.,* 106 *N. J. L.* 532, at *page* 535 (*E. & A.* 1930); *Harper & James, supra,* § 22.9; *Prosser, supra,* at *p.* 289.

At the retrial of this case, the defendants will doubtless seek to introduce certain other evidence that was excluded by the judge at the first trial. We feel that these matters should be clarified here, in anticipation of that event. First,

the defendants sought to cross-examine the plaintiff about his testimony at a prior criminal trial, and to confront him with the record of that testimony. The defendants' counsel represented that Stoelting had testified that Sandra shot him intentionally, pursuant to a conspiracy she had entered with Rolf Meuer to murder him. Second, the defendants sought to introduce the plaintiff's original, superseded, complaint in the present case. The complaint was filed soon after Stoelting testified in the criminal case. In addition to counts charging Sandra, her parents and Meuer with negligence, it charged that Sandra, "with a firearm, made an outrageous assault upon said Plaintiff, and willfully and deliberately shot him * * *." It also charged that Meuer "gave to Defendant Sandra Hauck said firearm for the purpose of shooting Plaintiff * * *."

The defendants' goal in attempting to bring this evidence before the jury was to undermine the plaintiff's credibility by showing that he had once given contradictory sworn testimony and filed a complaint based on allegations at variance with those advanced at the trial.

The trial judge excluded the cross-examination and the proffered evidence on the ground that the liability of the defendants would be unaffected whether the shooting was negligent or intentional, and that therefore the showing of inconsistency in Stoelting's versions of the occurrence "would not be evidential." The Appellate Division took up this question with other "miscellaneous trial errors" and found no prejudicial error in any of them.

█ It is long out of doubt that an admission, or prior inconsistent statement, of a party may be used either to attack his credibility or as affirmative substantive proof against him. *Link v. Eastern Aircraft, Linden Division, General Motors Corp.,* 136 *N. J. L.* 540 (*E. & A.* 1948) ; *Corbett v. Van Kirk,* 38 *N. J. Super.* 478 (*App. Div.* 1956). Prior statements under oath in a court of law are no exception to the rule. See, *e. g., Mitilenes v. Snead,* 45 *N. J. Super.* 246 (*App. Div.* 1957). The heightened reliability lent by

the circumstances of their utterance should make them, if anything, more readily admissible than informal extra-judicial statements.

Factual assertions in prior or superseded pleadings of parties stand on the same footing on this score as their admissions. *Mahoney v. Nitroform Co., Inc.,* 20 *N. J.* 499 (1956); *New Amsterdam Casualty Co. v. Popovich,* 18 *N. J.* 218 (1955); *Lincks v. Erie R. Co.,* 97 *N. J. L.* 343 (*E. & A.* 1922); *Winn v. Wiggins,* 47 *N. J. Super.* 215 (*App. Div.* 1957). See 4 *Wigmore, Evidence,* §§ 1066–67 (*3d ed.* 1940).

We believe that the plaintiff's prior testimony and factual statements contained in his original complaint were admissible to attack his credibility, and also had substantive evidential value. If the fact be that up to the time of his amended complaint, the plaintiff maintained that his injury resulted from an intentional shooting pursuant to a conspiracy between Sandra and Meuer, we believe that the jury should know that fact. If the jury believed the plaintiff lied in court on this matter, and agreed to false pleadings, they could well become chary of his testimony on other matters, such as his health and earning capacity before the shooting, and the adult defendants' knowledge of their daughter's activities with guns.

The contradictions, if they exist, are more than alternative legal conclusions about a single state of physical facts. They cannot be explained away by the unlikelihood that the plaintiff would know Sandra's secret thoughts at the moment she fired a bullet into him. In his prior sworn testimony, the plaintiff allegedly stated that Sandra deliberately shot him pursuant to a conspiracy with Rolf Meuer to kill him. In his original complaint, he alleged that Sandra purposely shot him after Meuer gave her the gun in order that she might do so. These are factual statements at variance with the allegations on which the plaintiff based his theory of recovery at the trial. If there is an explanation for the contradictions, the plaintiff should have a chance to make it before the jury.

But the existence of the explanation has no bearing on the question of the admissibility of the evidence.

At the retrial plaintiff's prior testimony and factual statements contained in his original complaint may properly bear on the issue of foreseeability on the part of Sandra's parents. Upon the admission of evidence of prior relations between Sandra and Stoelting and his prior testimony and complaint, it will be for the jury to determine whether the shooting was an intentional act brought on by those relations. Whether or not they so determine, it will also be for the jury to say whether the parents, assuming they had no knowledge of the relations between Sandra and Stoelting, should have foreseen that Sandra, a 15½-year old girl, would have obtained the gun and used it as she did. Of course, the evidence also has bearing on the defense of contributory negligence as showing the plaintiff's knowledge of the danger to which he was exposing himself by remaining in the household.

The admissibility of certain other exhibits is also raised by the defendants on this appeal. The rulings at the trial were within the bounds of the trial judge's discretion, and we find no error with regard to them.

The judgment of the Appellate Division is reversed and the cause is remanded to the Hunterdon County Court for a new trial.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR and SCHETTINO—6.

*For affirmance*—None.