81 N.J. Super. 1 (1963)
194 A.2d 501
JACK ABRAMSKY, PLAINTIFF-APPELLANT,
v.
ERVIN FELDERBAUM, MARTIN GANS, MARTIN FELDERBAUM, ESSO STANDARD OIL COMPANY, ETC. AND ENGCO BOTTLED GAS CORPORATION, ETC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1963.
Decided October 22, 1963.
*4 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Leslie S. Kohn argued the cause for appellant.
Mr. James L. Melhuish argued the cause for respondent Esso Standard Oil Company (Messrs. Doyle, Galvin, French & Melhuish, attorneys).
Mr. Allen C. Mathias argued the cause for respondent Engco Bottled Gas Corporation (Messrs. Smith, James & Mathias, attorneys).
The opinion of the court was delivered by COLLESTER, J.A.D.
Plaintiff Jack Abramsky appeals from a judgment of the Law Division entered following a jury verdict of no cause for action in favor of the defendants Esso Standard Oil Company (Esso) and Engco Bottled Gas Corporation (Engco). The complaint had also named Ervin Felderbaum, Martin Gans and Martin Felderbaum as defendants, but being non-residents they could not be served with process in this State. Thus, they are not involved in this action. A separate action was instituted against them in New York, to which reference is hereinafter made.
Plaintiff makes no contention that the verdict was against the weight of the evidence, but asserts that five rulings of the trial court were erroneous and warrant the granting of a new trial.
Plaintiff rented one residential unit in a bungalow containing two apartments at Mt. Freedom, New Jersey for the summer of 1957 from Messrs. Felderbaum and Gans. The latter had leased the bungalow colony that particular summer from Samuel Lipkin, the owner. The other apartment in the *5 bungalow was occupied by a Mrs. Teich, a daughter of Mr. Lipkin.
The building had a partial cellar which was somewhat below ground level. In this cellar were stored old mattresses, pillow cases, bed springs and other debris. Plaintiff testified that on his first visit to the cellar at the end of May 1957, and on other visits during the period of his tenancy, he noticed a foul, unpleasant and disagreeable odor, which was sometimes more noticeable than others, and which plaintiff associated with changes of the weather.
Also in the cellar were two water heaters, one for each apartment, fueled with liquid propane gas which was supplied from a tank outside the building, connected by copper tubing to the water heaters in the cellar. The tank of propane gas was supplied by Engco, which in turn purchased the gas from Esso.
On the evening of August 16, 1957 plaintiff spoke to Mrs. Teich about a foul odor he noticed in the cellar. She assured him that everything was all right; that she had been going down there for more than 25 years and nothing was wrong. On the following morning, August 17, 1957, the plaintiff opened the cellar doors outside of the bungalow, descended the steps to the cellar floor, and bent down and struck a match to light the water heater for his apartment. As he did so an explosion occurred, causing plaintiff to sustain injuries. He sued Esso and Engco for damages, alleging the explosion was caused by their negligence.
The plaintiff's theory of liability as to Esso was limited to its alleged failure to properly odorize the propane gas to provide a warning in the event of leakage. His theory of liability as to Engco was two-fold in character, namely, (1) that the propane gas supplied by Engco was not odorized or was inadequately odorized, and (2) that Engco negligently supplied gas to a patently defective appliance improperly installed (by others), or to a patently dangerous appliance.
There was testimony at the trial from which the jury could find that neither corporate defendant had violated any duty *6 owing by either of them to the plaintiff. There was evidence that ethyl mercaptan is an accepted and recommended odorizing element for liquified petroleum gas. The odor of gas containing this substance is disagreeable, unpleasant and foul, and is intended to be so in order to give adequate warning. There are established limits of combustibility within known percentages of a mixture of gas and air at which the propane and air will ignite. The infusion of a sufficient amount of ethyl mercaptan in the gas will give an odor which will be detected before there is a sufficient amount of propane in the air to reach the level at which it will ignite. Esso established by evidence that one pound of ethyl mercaptan per 10,000 gallons of liquified petroleum gas, including propane, meets the requirements for the proper odorization of liquified petroleum gas and propane, and that the shipments from Esso to Engco, including the cylinder involved in this occurrence, contained the required addition of ethyl mercaptan at the rate of one pound per 10,000 gallons.
As to Engco, there was conflicting testimony as to whether Engco breached its duty in connecting the gas supply to patently defective or dangerous appliances. In view of this conflict, the matter was left properly for the jury.
With this background we now consider the particular claims of error.

I.
Plaintiff's first contention is that the trial court erred when it refused to charge three requests submitted by the plaintiff which, in substance, were: (1) propane gas is an extraordinarily dangerous element; (2) gas being an extraordinarily dangerous element, an extraordinarily high degree of care and skill is exacted; and (3) the circumstances of the case required defendant Engco to exercise a degree of care which comprehends a circumspection, a foresight, a prevision, which has due and proper regard to reasonably probable contingencies as to whether this was a proper place of installation, and as to the use of other precautionary measures.
*7 Plaintiff's counsel made the following objection to the court's charge:
"I take exception to those portions of your charge where you have charged that the defendants or either of them or both of them owe a duty of reasonable care to the plaintiff. It is my understanding that the duty is a high degree of care commensurate with the circumstance and that the duty owed is one of using circumspection, foresight and pre-vision."
It will be noted that plaintiff's counsel did not comply with the strict injunction referred to in Williamson v. Berger, 11 N.J. 500, 505 (1953), relating to R.R. 4:52-1, in that he did not refer in his objection to the specific requests to charge which he had submitted and which the court had failed to charge. The rule requires specificity in order that the trial judge may be clearly apprised of the objection presented. Tennessee Gas Transmission Co. v. Maze, 45 N.J. Super. 496, 506 (App. Div. 1957). However, since the objection presented goes to the merits of the legal issue involved, namely, the standard of care required of the defendants, we will relax strict enforcement of the rule.
The first request submitted obviously was not a proper request to charge; it was merely a statement. The court was not duty bound to charge it specifically. Furthermore, in its charge to the jury the court did make reference to the fact that propane gas is an inherently dangerous substance.
The two other requests dealt with the degree of care involved. We find no prejudicial error in the refusal of the court to charge these requests. A reading of the charge as a whole satisfies us that it was complete, adequate and fair. It presented plaintiff's theories of his right to recover against the respective corporate defendants and correctly and clearly stated the principles of law involved.
A party is not entitled to have the jury charged in words of his own choice, but merely to have the charge as a whole clearly and correctly state the principles of law pertinent to the issues. Batts v. Newman, Inc., 3 N.J. 503 (1950); *8 Wyatt v. Curry, 77 N.J. Super. 1 (App. Div. 1962); Cahill v. Mundet Cork Corp., 70 N.J. Super. 410 (App. Div. 1961).
The court told the jury with reference to Esso that the plaintiff alleged a breach of duty upon the part of Esso as the manufacturer of the propane gas to add an odorizing element in sufficient quantity to provide a warning to eventual users of the gas for domestic or other purposes. The court then said:
"I instruct you that the defendant Esso Corporation had such a duty as the manufacturers of propane gas.
So you will have to review the testimony and decide certain disputed facts. Was the gas which exploded manufactured by Esso? If so, was the odorizing element ethyl mercaptan added by Esso in sufficient quantity to provide a warning? * * *
If you find from all the facts that defendant Esso Corporation breached its duty to add an odorizing element as a warning to users of propane gas, then you should find this defendant guilty of negligence."
Thus the court made clear to the jury plaintiff's theory of liability on the part of Esso  that Esso was under a duty to supply the odorizing element in sufficient quantity to give warning to users and that if it breached this duty Esso was guilty of negligence. The addition of the words requested by the plaintiff, namely, "that gas being an extraordinarily dangerous element, an extraordinarily high degree of care is exacted," was unnecessary in view of the adequate charge by the court as to Esso's required duty and the consequences of the breach of such duty.
These instructions were also made applicable to Engco. The court said:
"One duty owed by Engco Corporation is parallel to the duty the law imposes on the manufacturer of propane gas for domestic use. That is the duty not to supply it without ethyl mercaptan or some other odorizing element to provide sufficient warning of escaping gas to a domestic user in order that he may avoid an explosion and injury to himself. The same rules of law which I have given to you with reference to the case against Esso Corporation are applicable here and you should determine the same factual questions."
*9 Likewise, we are satisfied that the charge relating to Engco's duty not to connect the gas to a patently defective appliance was explained by the trial court to the jury in clear and understandable language. The trial judge charged that Engco had a duty,
"* * * not to connect the propane gas equipment, including the cylinder or drum for its storage, the regulator valve and the copper tubing for its movement from the cylinder to a heating appliance or to supply propane gas, an inherently dangerous substance, if it would appear to a reasonably prudent supplier of propane gas under all the circumstances that there are open obvious defects in the appliance in its location and it is forseeable that because of them or because of such defects an injury may occur to the user of the appliance which is to burn the propane gas."
And further, that the defendant Engco had a duty,
"not to connect with a hot water heater or other appliance which has patent defects which are likely to cause an explosion or other accident dangerous to its users."
Further, the jury was told that if Engco did in fact connect its equipment or supplied gas to a patently defective hot water heater, such action would constitute negligence.
These instructions placed an even greater responsibility upon the defendants than that contemplated by the use of the words "high degree of care." That expression means nothing more than a degree of care consistent with the dangerous character of the instrumentality or substance involved, or in the case of a supplier of propane gas, the degree of care which a reasonably prudent supplier of propane gas would have used under the circumstances. Here the trial judge imposed upon both defendants an absolute duty not to supply the gas without proper odorizing elements contained therein and upon Engco the absolute duty not to connect the gas to a patently defective heating appliance.
We are satisfied that the trial judge correctly and clearly instructed the jury and that plaintiff's theory of liability against the defendants was fully and fairly presented to the *10 jury. We find no error in the court's charge or in the court's refusal to charge the requests submitted by the plaintiff.

II.
Plaintiff next contends that the trial court erred in foreclosing cross-examination of Clarence W. Winchell, an expert witness called on behalf of Engco, about statements made by the witness in another case, Andreoli v. Natural Gas Co., 57 N.J. Super. 356 (App. Div. 1959), which plaintiff claims were in contradiction to testimony given by the witness in the instant case.
It is conceded in the present case that the water heaters had been installed without a vent or hood leading to the outside of the cellar or to a chimney. Winchell had apparently testified (his testimony is not contained in the appendix) that failure to vent or to install a hood on the heaters was not and could not have been the proximate cause of the explosion. On cross-examination he was asked a hypothetical question, namely, if a vent hood had been installed four feet from the floor, would not the slightest draft on the top of a chimney draw off the heavier-than-air propane gas? He answered that it would not. He was then asked,
"Does not the gas  by the way, didn't you testify in the Andreoli case that such a thing would take place?"
The court sustained an objection to the question, which ruling is the basis for the alleged error.
There is no question but that prior inconsistent statements are freely admissible to impeach a witness. State v. Salimone, 19 N.J. Super. 600 (App. Div. 1952); Link v. Eastern Aircraft, etc., 136 N.J.L. 540 (E. & A. 1948); McCormick on Evidence, § 34, p. 63 (1954). However, there is nothing in the record to show that a prior contradictory statement had been made.
The witness was not confronted with any statement of what he had testified to in the Andreoli case. He was faced *11 merely with the conclusion of the examining counsel of what some prior testimony might have been.
Plaintiff's counsel did not pursue this line of inquiry. He did not avail himself of the opportunity to make an offer of proof, permitted by R.R. 4:44-3, which would have given the trial court the right to intelligently ascertain whether or not such proof should have been admitted.
This court is without information as to whether the witness would have answered the question "Yes," or "No," "I don't remember," or "I cannot answer the question in that form." The witness might well have answered the question in the affirmative and gone on to explain away any ostensible inconsistency. As to that, we can only surmise.
It has been held that under such circumstances the propriety of the ruling by the trial court is not properly before the appellate court because the answer of the witness would be conjectural. Toscani v. Quackenbush Co., 112 N.J.L. 173 (Sup. Ct. 1934); Manhattan Overseas Co. v. Camden County Bev. Co., 125 N.J.L. 239 (Sup. Ct. 1940); Fielder v. Friedman, 124 N.J.L. 514 (E. & A. 1940). The state of the record before us does not show that plaintiff was prejudiced by the trial court's ruling in the instant matter.

III.
Plaintiff's third point is that the trial court erred in permitting cross-examination of the plaintiff on statements contained in a New York action brought against Ervin Felderbaum, Martin Gans and Martin Felderbaum, the individual defendants who could not be served with process in the present suit.
In his New York complaint, he specified that his injuries "were caused solely and wholly through the negligence of the defendants therein." Paragraph 6 of said complaint, which the trial court permitted to be read to the jury, contained a recital of several factual allegations charging those individual defendants with specific acts of negligence, followed by the *12 generalization that plaintiff's personal injuries were caused "solely and wholly" by their negligence.
The cross-examination complained of resulted in little, if any, material statements by the plaintiff since he professed to be unfamiliar with the language contained in the New York complaint. However, counsel for Engco was permitted to read paragraph 6, above referred to, to the jury as affirmative proof of an admission against the plaintiff. We take it that plaintiff's primary objection was to such a ruling.
In Stoelting v. Hauck, 32 N.J. 87 (1960), the original complaint filed contained counts charging negligence and an intentional shooting on the part of the defendant Sandra Hauck. It was amended before trial and the count charging an intentional tort was omitted. At the trial defense counsel sought to introduce the original, superseded, complaint in evidence. His goal was to undermine plaintiff's credibility by showing that he had once filed a complaint based on allegations at variance with those advanced at the trial. The trial court excluded such evidence. Our Supreme Court held that the factual statements contained in the original complaint were admissible to attack plaintiff's credibility; that if the jury believed that the plaintiff had agreed to false pleadings they could well be chary of his testimony on other matters. The court said, 32 N.J., at page 107:
"The contradictions, if they exist, are more than alternative legal conclusions about a single state of physical facts. * * *
In his original complaint, he alleged that Sandra purposely shot him after Meuer gave her the gun in order that she might do so. These are factual statements at variance with the allegations on which the plaintiff based his theory of recovery at the trial. If there is an explanation for the contradictions, the plaintiff should have a chance to make it before the jury. But the existence of the explanation has no bearing on the question of the admissibility of the evidence." (Emphasis added)
While it was not raised by counsel at the trial or in their briefs or on oral argument, it may well be that plaintiff's New York counsel used the words "solely and wholly" because *13 of the necessity under New York pleading of plaintiff's alleging that his injuries were due to the negligence of the defendants in that case and not due to any contributory negligence on his part. In a negligence action in New York, except in a death case, a plaintiff must plead and prove not only the negligence of the defendant, but also his own freedom from contributory negligence. That is probably what was intended in the New York complaint by use of the words "solely and wholly." However, plaintiff having made such an admission against interest in a formal pleading, cannot claim prejudice if that admission is used in evidence against him, even though he may not have fully intended it in the way it appears. As stated in Stoelting, supra, he would have an opportunity to explain the apparent contradiction before the jury. We find no prejudicial error in the ruling of the trial court.

IV.
Plaintiff further argues that the trial judge erred in refusing to permit plaintiff's counsel to read in evidence part of the complaint filed in the instant case. The record shows that plaintiff sought to read his entire complaint to the jury, including not only the first count which charged negligence on the part of the Felderbaums and Gans but also the second count charging negligence against the defendants Esso and Engco. Presumably, plaintiff sought to show that in the complaint he had charged the Felderbaums and Gans with negligence and had also charged Esso and Engco with different elements of negligence in order to overcome any inference derived from the allegations contained in the New York complaint. The difficulty with plaintiff's position in this regard is that he sought leave to read the entire complaint, with all its self-serving allegations, instead of merely showing that in the New Jersey action he had not limited his claim of liability to the individual defendants alone.
*14 Where a complaint contains self-serving declarations it cannot be received in evidence in support of the plaintiff's case. Freeman v. Ackerson, 94 N.J.L. 308, 310 (Sup. Ct. 1920). We are satisfied that there was no error in the ruling of the trial judge.

V.
Plaintiff's final contention is that the trial court erred in refusing to receive in evidence the answer filed on behalf of the defendant Engco. His argument is that since the defendant Engco was permitted to read to the jury part of the plaintiff's complaint filed in the New York action, he should be permitted to show that Engco's answer contained inconsistent statements.
Firstly, Engco's answer was clearly not admissible in evidence as to the codefendant Esso. Secondly, Engco had pleaded inconsistent defenses in its answer as permitted by R.R. 4:8-5. It would violate the spirit of the rule to allow a party to state his defenses "regardless of consistency," as permitted by the rule, and then permit another party to read such inconsistent defenses to the jury. It would only serve to defeat the purposes of the rule and to confuse the jury. There was no error in the court's ruling.
The judgment entered in this action is affirmed.