165 N.J. Super. 546 (1979)
398 A.2d 915
ALAN KLEIN AND LEONARD KLEIN, PLAINTIFFS-APPELLANTS,
v.
R & S AUTO STORES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND GENERAL PARTS CO., A CORPORATION OF THE STATE OF NEBRASKA, DEFENDANTS-RESPONDENTS, AND BOROUGH OF KENILWORTH, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 3, 1979.
Decided January 30, 1979.
*548 Before Judges LYNCH, CRANE and HORN.
Messrs. McElroy, Connell, Foley & Geiser, attorneys for appellants (Mr. George J. Kenny, of counsel; Mr. Richard D. Catenacci on the brief).
Mr. Elliot N. Fabricant, attorney for respondent R & S Auto Stores, Inc. (Ms. Carol A. Ferentz, of counsel and on the brief).
Messrs. Hueston, Hueston & Sheehan, attorneys for respondent General Leisure Products, Inc. (named in pleadings as "General Parts Co." Mr. Robert T. Hueston, of counsel and on the brief).
The opinion of the court was delivered by HORN, J.A.D.
This is a mini-bike accident case. On July 21, 1969 plaintiff Alan Klein, then 14 years old, suffered severe head injuries as the result of an accident which occurred while he was riding his mini-bike on a public street in Kenilworth, New Jersey. After Alan attained his majority, he instituted this action to recover damages from defendants R & S Auto Stores, Inc. (R & S), the seller, and General Leisure Products, Inc.[1] (General Leisure), the manufacturer of the bike. Plaintiff Leonard Klein, father of Alan, joined in the action for consequential damages. The Borough of Kenilworth, which was added as a party in an amended complaint, was dismissed during the trial. The theories of liability included negligence, strict liability and breach of warranty.
*549 After an extended jury trial, judgments were entered in favor of defendants by reason of the jury's answer to the first of a set of special interrogatories submitted to it. Following an unsuccessful motion for a new trial, plaintiffs filed this appeal.
The bike had been purchased new from R & S about 10 to 14 days before the accident. Plaintiffs contended that while Alan was riding the bike the drive chain came off the rear sprocket and wedged between it and the rear wheel, causing the bike to stop precipitously and to cause Alan to fall from it. There was evidence from a police officer who arrived shortly after this unfortunate occurrence that Alan was in a coma when the officer saw him, and that the chain was off the rear sprocket and so wedged that the wheel was locked. Alan had no recollection of the immediate events surrounding the accident.
The case was tried on plaintiffs' factual contention that a defective drive chain on the bike became so loose between the date of the purchase of the bike and the day of the accident as to disengage from the rear sprocket. Accordingly, plaintiffs claimed that General Leisure, the manufacturer, was liable because of a defective design which permitted the chain to become too loose. They claimed R & S was culpable because it neglected to alert them as to how to overcome the design defect by making certain adjustments which would retain the necessary chain tension.
Defendants denied plaintiffs' contentions and sought to show that even if there was a defect in the chain because it was too loose, the resulting hazard did not contribute to the cause of the accident. Specifically, they depended upon the testimony of one Miles Baral, who was an alleged eyewitness to the event. He testified that Alan and others were racing when a sudden untoward event caused the bike to veer left on a 45- to 60-degree angle and hit the street curb. This collision with the curb, defendants urged, caused the chain to come off the sprocket and wedge between it and the rear wheel. Defendants introduced evidence that no skid marks *550 were found in the street which, according to defendants' expert, would have been caused if the rear wheel had suddenly locked as contended by plaintiffs.
One other point adduced by defendants through Baral's testimony was that either Alan or a mechanic in a mini-bike shop had installed a new master link in the chain earlier in the day of the accident and that the chain was in fact tight at the time of the accident.
The case was presented to the jury on a series of special interrogatories which directed the jury to go to later questions only if earlier ones were answered affirmatively. The first and only question answered by the jury was:
1. While Allan Klein was riding the mini bike, was there slack in the chain so that it jumped off the rear sprocket and became wedged in a way that stopped the rear wheel from turning thereby causing the accident?
Yes [] go to 2
No [] this is your last question.
The jury answered this question in the negative, and on this response judgment was entered against plaintiffs.
Plaintiffs advance four reasons why we should reverse the judgment under review. Three of these may be considered together. These are: first, that in formulating the special interrogatories and in particular the first one, as already quoted, the judge unduly restricted the jury to a narrower basis for finding one or more of defendants liable than legally proper; second, that because of the form of the special interrogatories submitted to the jury the jury was not afforded the opportunity to pass upon the negligence of R & S or whether that negligence was a proximate cause of the accident, and, third, that the trial judge improperly forced plaintiffs to choose between a strict liability and an express warranty theory of liability.
The gist of plaintiffs' first contention is that in a products liability case the injured plaintiff is not required to prove a specific manufacturer's defect so long as the proofs permit *551 an inference that the accident was caused by some defect, whether identifiable or not. Moraca v. Ford Motor Co., 66 N.J. 454 (1975); Sabloff v. Yamaha Motors Co., Ltd., 59 N.J. 365 (1971).
In this argument plaintiffs apparently overlook the fact that there was no basis for recovery established in the case beyond the alleged defect in the chain. The judge submitted the case to the jury on this thesis without objection. The jury is not permitted under the rule of the cited cases or by Scanlon v. General Motors Corp., 65 N.J. 582 (1974), to base liability on some hypothesis not demonstrated by the evidence as being probable. Thus, in Scanlon Justice Clifford wrote:
Plaintiff argues, however, that Sabloff v. Yamaha Motor Co., Ltd., supra, 59 N.J. at 366, frees him from the strictures of the explanation for the accident advanced by his expert. While it is true, as a general proposition, that such flexibility now would be allowed both in terms of proof and theory of the case, the fact here is that plaintiff undertook voluntarily to confine himself. * * * Here the plaintiff's case was predicated upon a single and specific defect; that is the case defendants had every reason to believe they were defending against; and that is precisely the theory upon which the trial proceeded. Under these circumstances plaintiff cannot now be heard to argue for reversal on a question foreign to the initial proceedings. See Schwartz v. Rothman, 1 N.J. 206, 210-211 (1948); Domestic Fuel Co. v. American Petroleum Corp., 6 N.J. 538, 545 (1951); State v. Rios, 17 N.J. 572, 599 (1959); Stoelting v. Hauck, 32 N.J. 87, 99 (1960). [65 N.J. at 598]
Likewise, as to the other two contentions, once the jury determined, as it did, that the chain was not a contributing cause of the accident, plaintiffs were not entitled to recover. Even if R & S was negligent as claimed, nonetheless the finding of the jury precluded any concept that that negligence was a proximate cause of the accident.
Our view of the record does not support plaintiffs' claim that the judge improperly compelled the jury to choose between theories of liability. But, even if there were some substance to that argument, what we have stated as to the *552 effect of the jury's answer to the first interrogatory dissipates any inference of prejudice.
Finally, we turn to plaintiffs' fourth contention, that they were prejudiced by the trial judge's limitations on questions to their expert. The trial judge did invoke R. 4: 10-2(d) (1) in requiring plaintiffs to relate their expert's testimony to the discovery material furnished to defendants in response to interrogatories. However, the judge refused defendant General Leisure's request to confine plaintiffs' expert to the four corners of his report. We need not engage in any lengthy discussion of this point. The disputed questions involved the adequacy of the written instructions in the owner's manual concerning chain tension; whether there was an obligation to inspect the chain for proper tension before the sale of the bike; the expert's opinion of the adequacy of the engine mount for maintaining chain tension, and the expert's opinion of the adequacy of the chain on the mini-bike as it relates to chain slack or play. These were also intimately related to the single basis of recovery  a defective chain. But, as already shown, the jury ruled out such fact.
In any event, we are also satisfied that the attempt to ask these questions came too late  after examination of the expert had been completed by plaintiffs' attorney and after direct, cross, redirect and recross examination of the expert. We do not agree with plaintiffs that the failure to timely propound these questions was the result of any improper rulings of the judge.
Accordingly, since we find that plaintiffs' contentions are without merit, the judgment of the trial court is affirmed.
NOTES
[1] Erroneously named in the pleadings as "General Parts Co."