712 A.2d 1215 (1998)
313 N.J. Super. 325
STATE of New Jersey, Plaintiff-Respondent,
v.
Kevin PLEASANT, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 8, 1997.
Decided June 24, 1998.
Ivelisse Torres, Public Defender, for defendant-appellant (William Welaj, Designated Counsel, of counsel and on the brief).
Peter Verniero, Attorney General, for plaintiff-respondent (John E. Adams, Jr., Deputy Attorney General, of counsel and on the brief).
Before Judges PETRELLA, EICHEN and LESEMANN.
The opinion of the court was delivered by *1216 PETRELLA, P.J.A.D.
Defendant Kevin Pleasant was tried under a six count indictment charging him with a number of drug offenses and unlawful possession of a weapon. The jury unanimously found Pleasant guilty of conspiracy to possess a controlled dangerous substance (CDS) (marijuana) with intent to distribute (N.J.S.A. 2C:5-2); possession of a hand gun without a permit (N.J.S.A. 2c:39-5b); and employing a juvenile in a drug distribution scheme (N.J.S.A. 2C:35-6). The jury was unable to reach a verdict on counts charging him with possession of CDS (N.J.S.A. 2C:35-10a(3)); possession of CDS with intent to distribute (N.J.S.A. 2C:35-5b(11)); and distribution of CDS to one Rajhon Foushee (N.J.S.A. 2C:35-5b(12)), and a mistrial was declared as to those counts.[1]
Pleasant was sentenced to a mandatory five year prison term, five years without parole eligibility, for his conviction of employing a juvenile in a drug distribution scheme. He received concurrent three-year prison terms for the convictions of conspiracy and possession of a weapon.
On appeal Pleasant argues:
I. The trial court failed to adequately and sufficiently instruct the jury regarding employing a juvenile in a drug distribution scheme.
II. The jury's verdict on the remaining counts (possession of CDS, possession of CDS with intent to distribute, and distribution of CDS) precluded a conviction on the count charging him with employing a juvenile in a drug distribution scheme as a matter of law, requiring a dismissal of the conviction and resulting sentence imposed. (Not raised below).
We reject Pleasant's contentions and affirm.
Predicated on the proofs presented, the jury could have found the following facts beyond a reasonable doubt. Newark police officers on narcotics surveillance with power binoculars observed unlawful drug activity taking place about 8:30 p.m. on November 30, 1994, at 46 Fabyan Place in Newark.
Detective Cuccolo testified that he was in a surveillance vehicle near the premises on the evening in question and observed through binoculars a passing of money at the front of the driveway by the sidewalk from a man, later identified as Rajhon Foushee, to someone later identified as seventeen year old Lejon[2] Bailey. The detective then saw Bailey pass that money to Kevin Pleasant who was, at the time, standing about fifteen feet away by the corner of the house in the driveway of 46 Fabyan Place. Cuccolo said that upon receipt of the money, he saw Pleasant bend down, retrieve a small object from the ground, and hand it to Bailey who went back down the driveway and gave it to Foushee who was waiting on the sidewalk. It turned out that the package contained marijuana.
Satisfied that they were witnessing a drug sale, Cuccolo and his partner moved to arrest Foushee (who had four bags of marijuana in his hand), Bailey and Pleasant. The police identified themselves verbally and displayed badges. Cuccolo observed Pleasant reach into his waistband as the police approached. He testified that he saw Pleasant remove a handgun and throw it to the ground. The police then ordered everybody to the ground and Pleasant, Bailey and Foushee complied. The detective retrieved a fully loaded Glock nine millimeter semi-automatic handgun with five live rounds as well as seventy-eight small bags and six large bags of marijuana in bags next to Pleasant. The State's expert linked several bags of marijuana found on Foushee to those testified to as belonging to Pleasant. In the detective's opinion, the seventy-eight small bags and six large bags of marijuana would not be held for personal use, but rather *1217 would be for distribution, and that a juvenile was typically used by an adult as part of the transaction. There was no evidence that the police efforts were directed at investigating 46 Fabyan Place, the purported source of the drug sales.
Pleasant and his brother testified they had driven to 46 Fabyan Place, along with Bailey (the juvenile) and Edward Stoville[3] on the date stated to buy marijuana for their own use. They acknowledged that the premises was well known for obtaining drugs. Pleasant denied any involvement in any sale of marijuana and denied possession of the seventy-eight small bags and six large bags of marijuana and also denied possession of a weapon. He said he only had ten dollars with him when he went to the premises to buy two five-dollar bags of marijuana.
James Stewart testified he went with Foushee to the same premises to buy drugs. Foushee said he had gone to Fabyan Place for the same purpose and was standing "in line" ahead of Pleasant (although he said he did not know him before that) to buy marijuana through a hole where the door had been. The procedure to get drugs was to hand money through the opening and receive the drugs in exchange from persons he could not see. He claimed he did not see anybody and denied seeing a gun and just about anything else. No one else was charged as a result of the incident.
The jury obviously rejected on credibility grounds much of the testimony presented on the defense case because it returned a guilty verdict on the conspiracy and employing a juvenile charges in the indictment. Of course, the jury's hung verdict on the other charges does not offer any insight on its assessment of credibility as to those charges.

I.
The trial judge denied, as unnecessary, Pleasant's request to instruct the jury in the following language:
[I]f you find that Kevin Pleasant knowingly used, solicited, directed, hired or employed R.B. to simply or just possess marijuana with no intent to manufacture, distribute or dispense marijuana, he cannot be found guilty of Count Five.
Defense counsel unsuccessfully renewed his request after the jury instruction. Pleasant claims that the judge should have instructed the jury in line with his requested charge in order to focus the jury's attention on the issue of whether Pleasant was engaged with a minor in a drug distribution scheme, or whether at the time of his arrest he was simply trying to buy some marijuana for his own use.
The judge charged the jury as follows:
So, in other words, the State must satisfy you with proof beyond a reasonable doubt that the defendant, Kevin Pleasant, was in fact 18 years of age or more at the time he knowingly used, solicited, directed, hired or employed [Lejon] Bailey, who was in fact at that time 17 years of age or younger, to commit the crime of either maintaining or operating a controlled dangerous substance production facility, as previously defined to you, or to manufacture, distribute or dispense a controlled dangerous substance or controlled substance, as previously defined, or had possession of a controlled dangerous substance with the intent to distribute it.
Thus, the juvenile need not actually commit any violation of the law. The State need only prove that the defendant knowingly used the juvenile to violate the law or solicited him to perform the illegal activity described in the Indictment. And that illegal activity, again, would be to possess marijuana and to possess it with the intent to distribute it and/or to distribute marijuana. [Emphasis added].
N.J.S.A. 2C:35-6, captioned "Employing a juvenile in a drug distribution scheme," provides in pertinent part:
Any person being at least 18 years of age who knowingly uses, solicits, directs, hires or employs a person 17 years of age or younger to violate N.J.S. 2C:35-4 or subsection a. of N.J.S. 2C:35-5, is guilty of a crime of the second degree and shall ... be sentenced to a term of imprisonment *1218 which shall include the imposition of a minimum term (of) ... five years ... during which the defendant shall be ineligible for parole.
The quoted statute refers to the involvement of a juvenile employed by an adult in connection with a violation of either N.J.S.A. 2C:35-4 or N.J.S.A. 2C:35-5a. N.J.S.A. 2C:35-4 deals with maintaining or operating a CDS production facility and has no application here. N.J.S.A. 2C:35-5a,[4] however, deals with possession of a controlled dangerous substance (which includes marijuana) with intent to distribute the same, and is applicable. It states in pertinent part:
[I]t shall be unlawful for any person knowingly or purposely:
(1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance....
N.J.S.A. 2C:35-5a encompasses two alternative types of possession with intent to distribute, actual and constructive. This section differs from N.J.S.A. 2C:35-10, the simple possession statute, which applies only to possession for personal use.
The State and Pleasant do not disagree on the meaning of those statutes. However, Pleasant argues that N.J.S.A. 2C:35-5a is susceptible to an interpretation that a defendant is guilty for merely utilizing a juvenile to possess CDS without an intent to distribute. Thus, Pleasant contends that the court's charge was ambiguous in that it suggested to the jury that Pleasant might have been guilty of violating the statute for using a juvenile merely to possess marijuana. We initially note that no case in this State since the adoption of the statute in 1970 has accepted or applied the somewhat novel construction of this statute advocated by Pleasant.
The suggested alternative construction presents a strained reading of subsection 5a. Pleasant would have us consider that the jury applied or could have understood and applied the words "with intent to distribute" as referring only to the immediately preceding phrase "have under his control," constructive possession, and not to the word "possess," actual possession. He argues that under such a reading, the statute would cover simple possession of a CDS, as well as possession of a CDS with intent to distribute. He also argues that the potential for misreading was increased because the indictment tracked the statutory language, as did the verdict sheet, which asked:
[H]ow do you find the defendant, Kevin Pleasant, as to the charge that on November 30, 1994, being at least 18 years old, he did knowingly use, solicit, direct, hire or employ Lejon Bailey, a person 17 years of age or younger to distribute, dispense, or to possess or have under his control with the intent to distribute, a controlled dangerous substance, marijuana?
However, the record does not reasonably support a conclusion that Bailey possessed the marijuana for his own use or the assertion that the jury might have misapplied the law. Nor could such a conclusion be gleaned from the jury's inability to reach a unanimous verdict on some of the charges. As noted, Bailey did not even testify.
There is no doubt that "[A]ccurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial. The trial court has an absolute duty to instruct the jury on the law governing the facts of the case." State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). The charge must also explain to the jury how it is to apply the legal principles to the facts. However, a defendant is not entitled to have the jury instructed in his own words. State v. Ball, 268 N.J.Super. 72, 112, 632 A.2d 1222 (App.Div.1993), aff'd, 141 N.J. 142, 661 A.2d 251 (1995), cert. denied, 516 U.S. 1075, 116 S.Ct. 779, 133 L. Ed.2d 731 (1996); Abramsky v. Felderbaum, 81 N.J.Super. 1, 7, 194 A.2d 501 (App.Div.), certif. denied, 41 N.J. 246, 196 A.2d 6 (1963). He is only entitled to an adequate instruction of *1219 the law. See State v. Manley, 54 N.J. 259, 271, 255 A.2d 193 (1969). That he received.
Here, the facts were not complicated. Moreover, defense counsel, over the State's objection, was permitted to tell the jury that a finding that defendant merely possessed the marijuana was insufficient to support a guilty verdict of employing a juvenile and conspiracy. The jury had clear credibility determinations to make, and did so, as to the counts on which it was able to return a verdict, resolving them against Pleasant.
The judge essentially charged the jury in the language of Model Jury Charges (Criminal) 2C:5-2; 2C:35-5; 2C:35-6. Prior to the judge's instructions on the employment of a juvenile in a drug distribution scheme he instructed the jury on the conspiracy charge, emphasizing the required element of possession with intent to distribute. In charging the jury on the elements of conspiracy the judge emphasized that in order for the jury to find Pleasant guilty of conspiring with the juvenile Bailey it had to find that Pleasant conspired to both possess the marijuana and possess it with intent to distribute. The jury was so instructed of the necessity of such a joint finding at least nine times. The judge stressed in the conspiracy charge that the State had to prove that Pleasant "agreed with Rajhon Bailey that one of them would commit, attempt to commit or solicit someone to commit both crimes of possession of a controlled dangerous substance and possession of a controlled dangerous substance with intent to distribute...." The judge thus emphasized that more than simple possession was required, as the language of the Model Criminal Jury Charge suggests, and that there also had to be intent to distribute or distribution involved. That is what distinguishes the offense under N.J.S.A. 2C:35-5a from N.J.S.A. 2C:35-10.
Thereafter, the judge correctly told the jury that Pleasant was "charged with employing a juvenile in a scheme to either distribute, dispense or possess with the intent to distribute a controlled dangerous substance, which is marijuana." He also instructed the jury that in order to find Pleasant guilty of employing a juvenile in a drug distribution scheme it had to find that Pleasant had employed Bailey in the "possession of a controlled dangerous substance with the intent to distribute it."
Indeed, the judge took into account Pleasant's trial attorney's concerns when he inserted into the model jury charge language the instruction: "And that illegal activity, again, would be to possess marijuana and to possess it with the intent to distribute it and/or to distribute marijuana." (Emphasis supplied). The judge in his instructions with respect to the employment of a juvenile in a drug distributions scheme again reminded the jury that "if ... the State has not proven any one or more of these elements beyond a reasonable doubt, then you must find the defendant not guilty of this count of the indictment." This was in accord with the suggestion in the model jury charge for N.J.S.A. 2C:35-6.
There is nothing to indicate that the jury was confused or did not understand the judge's instructions. Clearly, the jury understood the instructions in light of its finding that Pleasant was guilty of the offense of conspiracy to possess marijuana with intent to distribute. As discussed infra, it is rational to assume that the jury believed Pleasant and the juvenile conspired to possess marijuana with the intent to distribute and that Pleasant employed the juvenile to possess the marijuana with the intent to distribute it.[5] The charge was no more lengthy nor complex than in the numerous other similar cases involving offenses such as those that were involved in this case. The charge as delivered included accurate statements of the law, particularly when read as a whole and viewed in its entirety. See State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973).
We assume, and with good reason, that jurors abide by their sworn oath, comply with their obligations and follow instructions given to them by the trial judge. State v. Manley, supra, 54 N.J. at 270-271, 255 A.2d 193; State v. Compton, 304 N.J.Super. 477, 483, 701 A.2d 468 (App.Div.1997). The instructions *1220 here were sufficiently clear, unambiguous and helpful to the jury. They did not have the capacity to mislead the jury. It is one thing to say a jury instruction can be improved, or that it might have been better to expressly state that mere possession of CDS by the juvenile for personal use would not constitute a violation of the statute, but it is something else to read the statute in a tortured sense. As noted, it is hardly likely that any reasonable juror would have been confused here, particularly when it convicted Pleasant of conspiracy to possess marijuana with intent to distribute (as well as possession of a semi-automatic weapon). Under the jury's findings, that conspiracy involved the 17 year old juvenile, Lejon Bailey. Thus, any error was harmless beyond a reasonable doubt.

II.
Pleasant also maintains that the verdict on the several counts of the indictment was inconsistent because of the jury's inability to return a guilty verdict against him for possession of marijuana with intent to distribute. He argues that it is not logical for the jury to have found him guilty of having employed a juvenile in an operation premised on possession of marijuana with intent to distribute and not have been able to reach a verdict on the other charges. Pleasant thus contends that his conviction of employing a juvenile in a drug distribution scheme should be set aside.
An inconsistent verdict in a criminal trial is not a basis to set aside a jury's determination of guilt. Here, the inconsistent verdict claim is a non-issue because the jury did not reach a verdict on the other counts but was "hung" or deadlocked. The result was a non-verdict on those counts. Moreover, any argument that the "verdict" was internally inconsistent could be challenged factually, but it is unnecessary to engage in idle speculation concerning the reasoning of the jury in returning its verdict as it did and its inability to agree on a verdict on other counts. We have long since adopted the "modern and majority rule ... that consistency between the verdicts on the several counts of an indictment ... each charging substantially the same offense, is unnecessary...." State v. Still, 112 N.J.Super. 368, 373, 271 A.2d 444 (App.Div.1970), certif. denied, 57 N.J. 600, 274 A.2d 53 (1971). See also State v. Grey, 147 N.J. 4, 10, 685 A.2d 923 (1996); State v. Thrunk, 157 N.J.Super. 265, 277, 384 A.2d 906 (App.Div. 1978). This well-established principle was first pronounced by the United States Supreme Court in Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L. Ed. 356, 358-359 (1932), and was reaffirmed in United States v. Powell, 469 U.S. 57, 64-65, 105 S.Ct. 471, 476, 83 L. Ed.2d 461, 468-469 (1984). In Powell, the Court reviewed the underpinnings of the rule permitting inconsistent verdicts:
First, ... inconsistent verdictseven verdicts that acquit on a predicate offense while convicting on the compound offenseshould not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause....
Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. [469 U.S. at 65, 105 S.Ct. at 476-477, 83 L. Ed.2d at 468-469].
The Court in Powell rejected the proposition that criminal defendants should be permitted to challenge inconsistent verdicts on the basis that the inconsistency stems not from lenity, but rather from some error that worked against them, stating, "[s]uch an individualized *1221 assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake." 469 U.S. at 66, 105 S.Ct. at 477, 83 L. Ed.2d at 469. These principles are clearly applicable here.
Instead of finding that the jury reached rational conclusions on the counts on which the jury found Pleasant guilty, conspiracy to possess CDS with intent to distribute and possession of a handgun without a permit, and then mistakenly convicted him of the count charging employment of a juvenile in a drug distribution scheme, it is equally conceivable that the jury reached its considered verdict on the employment of a juvenile charge, and then for some unknown reason "mistake, compromise or lenity"was unable to agree and to reach any verdict on the other charges. As Dunn, Powell, Grey, and State v. Petties, 139 N.J. 310, 319, 654 A.2d 979 (1995) make clear, the test is whether the guilty verdict is supported by sufficient evidence in the record, and that determination is to be made "independent of the jury's determination that evidence on another count was insufficient." State v. Grey, supra, 147 N.J. at 27, 685 A.2d 923 (quoting Powell, supra, 469 U.S. at 67, 105 S.Ct. at 478, 83 L. Ed.2d at 470). We thus also reject Pleasant's inconsistent verdict argument even if the argument could apply to the failure to return a verdict on certain counts.
Affirmed.
LESEMANN, J.S.C., temporarily assigned, (dissenting).
The most serious charge against defendant in this multi-count indictment was count six which charged him with employing a minor in a drug distribution scheme, in violation of N.J.S.A. 2C:35-6. A conviction for violating that statute carried a minimum mandatory sentence of five years imprisonment with five years parole ineligibility.
N.J.S.A. 2C:35-6, however, deals with employing a minor in the possession of drugs with the intent of distributing those drugs.[1] It does not apply to possession alone which (while it would violate other criminal statutes) would not involve the heavy mandatory penalties of N.J.S.A. 2C:35-6.
Here, both the State and the defense agree that unlawful drug activities took place on November 30, 1994 at premises known as 46 Fabyan Place in Newark. However, they disagree as to the nature of those activities. The State maintains that defendant was conducting a drug selling operation with seventeen-year-old Rajhon Bailey. Defendant says that he and Bailey were simply trying to buy some five-dollar bags of marijuana for their own use. The State's scenario would constitute a violation of N.J.S.A. 2C:35-6; defendant's would not.
The issue of which version to accept was obviously a question for the jury. Just as obviously it was the answer to that question on which a verdict of guilt or innocence would probably turn. Thus, a clear, unequivocal instruction on that point was imperative. It was essential that the jury understand that a guilty verdict could be returned only if it found that on the evening in question defendant had possession of marijuana for the purpose of distributing it. If they did not believe that, if they accepted defendant's claim that he and Bailey were simply trying to buy some marijuana for their own use, they could not find him guilty on the sixth count of the indictment.
For reasons discussed further below, defense counsel was concerned that a mere recitation of the language of the statute and the indictment would be ambiguous and would leave that key issue unclear. To resolve that problem, and also to focus the jury's attention on the central issue in the case, he asked the court to include in its charge the following statement:
If you find that Kevin Pleasant knowingly used, solicited, directed, hired or employed R.B. [Rajhon Bailey] to simply or just possess marijuana with no intent to manufacture, distribute or dispense marijuana, he cannot be found guilty of Count 6.
The court refused that request. It did so, not because it disagreed with the proposed statement, but rather because it maintained *1222 that the substance of the request was contained in the remainder of the court's charge.
I do not believe that to be the case. I do not believe the instruction delivered by the trial court was clear and unequivocal on that key point. Indeed the instruction as delivered contained ambiguous language which may well have conveyed a contrary impression to the jury.
Because of what I conceive to be the trial court's unwarranted and prejudicial rejection of defendant's request to charge, I must dissent from the majority's affirmance of his conviction. I regard the rejected instruction as essential to the elimination of potential prejudice in the charge as delivered, and also important in focusing the jury's attention on the key question in an otherwise lengthy and complex charge. I have a realnot merely a theoreticalconcern that a danger of confusion and prejudice inhered in the charge as delivered, a concern not allayed by the inconsistent verdict actually returned by the jury. I can see no reasonable basis for the trial judge's refusal to charge as requested and I believe defendant's conviction on the sixth count of the indictment should be reversed.

I
The State's version of the case was presented mainly through the testimony of Newark Police Detective John Cuccolo who was in a surveillance vehicle near 46 Fabyan Place on the evening in question. He described a series of events which began with the passing of money from a man who turned out to be Rajhon Foushee, to someone who was later identified as seventeen-year-old Rajhon Bailey. Cuccolo said that Foushee and Bailey were on the sidewalk in front of 46 Fabyan Place when Foushee passed the money to Bailey. He said Bailey then walked up the driveway to defendant James Pleasant who was standing in front of the house, at the end of the driveway. He said Bailey then gave the money to Pleasant, Pleasant gave Bailey a package in exchange (which later proved to be marijuana) and Bailey then brought the package to Foushee who was waiting on the sidewalk. Cuccolo said that he and his partner were satisfied that they were witnessing a drug sale and accordingly they placed Foushee, Bailey and Pleasant under arrest. Cuccolo also said they found seventy-eight small bags and six large bags of marijuana next to defendant. The State's expert purported to link several bags of marijuana which the police said they found on Foushee to marijuana said to belong to defendant. The expert testified that, in his opinion, the marijuana was not being held for personal use but rather was for distribution, and that the juvenile, Bailey, was a part of the transaction.
Four defense witnesses (including the defendant himself) presented essentially identical versions of defendant's presence at 46 Fabyan Place on November 30, 1994. They said he had gone there to buy marijuana for his personal use.
Rajhon Foushee testified that 46 Fabyan Place was a well-known drug source. On the evening in question he went there accompanied by James Stewart and Toshawn Stetton to buy marijuana, as he had done in the past. Following the routine he had followed on prior occasions, he went to a doorway at the side of the house where he deposited twenty dollars into a slot from which he then received four five-dollar bags of marijuana. Under the normal procedure, which was followed that evening, a purchaser does not see the person who is providing the marijuana; the exchange of money for marijuana occurs through the slot, or opening, in the door.
Foushee said that Steward and Stetton had waited for him in the car. Standing behind him, waiting to purchase marijuana when Foushee had finished his own transaction, was defendant David Pleasant and behind Pleasant was Rajhon Bailey. He did not know Pleasant or Bailey and he said he had no contact of any kind with them except for their standing behind him in line. He had just received his own four bags of marijuana when someone shouted a warning that the police were coming. He attempted to escape but was seized and placed under arrest. He also saw Pleasant and Bailey arrested. He denied any transaction of any kind with Pleasant or Bailey and specifically denied that he was involved in any purchase from either of them. He maintained that Pleasant and Bailey were at the premises for *1223 the same reason that he was there: to buy marijuana for their own use.
Defendant and his brother, David Pleasant, testified that the two of them, plus Bailey and one Edward Stoville, had driven together to the premises to buy marijuana for their own use. They too described 46 Fabyan Place as a well-known drug source. David Pleasant said that he and Stoville had remained in the car while defendant and Bailey walked up to the house to buy the marijuana. He denied that any of them were involved in any sale of drugs.
Defendant, testifying on his own behalf, also said he had gone to the premises to purchase marijuana for his own use. He said he had wanted to smoke some before going to a roller skating rink. He testified that he and Bailey had walked up to the house and were waiting to make their purchase when the police descended on the premises and he and Bailey, together with some others, were arrested. He denied any involvement in any sale of marijuana. He said he had ten dollars with him at the time, intending to buy two five-dollar bags of marijuana. He denied having a gun in his possession and denied having any marijuana of any kind in his possession when he was arrested.

II
N.J.S.A. 2C:35-6, in its pertinent part, reads as follows:
Any person being at least 18 years of age who knowingly uses, solicits, directs, hires or employs a person 17 years of age or younger to violate N.J.S. 2C:35-4 or subsection a. of N.J.S. 2C:35-5 is guilty of a crime of the second degree and shall ... be sentenced to a term of imprisonment which shall include the imposition of a minimum term (of) ... five years, ..., during which the defendant shall be ineligible for parole.
As noted above, the statutory reference is to the involvement of a juvenile in a violation of either N.J.S.A. 2C:35-4 or N.J.S.A. 2C:35-5a. N.J.S.A. 2C:35-4 deals with a drug production facility and has no application here. N.J.S.A. 2C:35-5a, however, deals with possession of a controlled dangerous substance (which includes marijuana) with intent to distribute the same, and is applicable. N.J.S.A. 2C:35-5a says, in subparagraph (1) that
[I]t shall be unlawful for any person knowingly or purposely:
(1) To manufacture, distribute or dispense, or to possess or have under his control with intent to manufacture, distribute or dispense, a controlled dangerous substance....
It is acknowledged by all that N.J.S.A. 2C:35-5a refers to possession with intent to distribute and is distinct from N.J.S.A. 2C:35-10, the simple possession statute, which applies to possession for personal use. Even if a violation of the latter statute were to involve a minor, the heavy penalties prescribed in N.J.S.A. 2C:35-6 would not come into play as they would if there were an intent to distribute under N.J.S.A. 2C:35-5a.
While the State and the defendant agree on the meaning of those statutes, the language of N.J.S.A. 2C:35-5a, read literally, is susceptible to a different interpretation. The issue stems from the language "... to possess or have under his control with intent to... distribute...." The proper reading of the statute recognizes that the clause "with intent to ... distribute" refers to both the word "possess" and to the following phrase, "have under his control." Thus, the statute applies to (a) one who possesses "with intent... to distribute"; and (b) one who has a controlled dangerous substance "under his control with intent ... to distribute."
The alternative construction of subsection 5a is to read the words "with intent to distribute" as referring only to the immediately preceding phrase, "have under his control," and not to the word "possess." Under such a reading, the statute would cover (a) one who merely possesses (without intent to distribute); and (b) one who has a controlled dangerous substance "under his control with an intent ... to distribute."
The potential for misreading was increased in this case because the indictment tracked, almost verbatim, the language of the statute. Count six of the indictment charged that defendant

*1224 Did knowingly use, solicit, direct, hire or employ R.B., a person 17 years of age or younger to manufacture, distribute, or dispense or to possess or have under his control with intent to ... distribute ... a controlled dangerous substance.
And the verdict sheet which the trial court gave to the jury contained that same language:
How do you find the defendant, Kevin Pleasant, as to the charge that on November 30, 1994, being at least 18 years of old, he did knowingly use, solicit, direct, hire or employ Rajhon Bailey, a person 17 years of age or younger to distribute, dispense, or to possess or have under his control with the intent to distribute, a controlled dangerous substance, marijuana?[2]
To obviate the problem of the potential ambiguity in the statute and indictment, defense counsel made what would seem to be an unobjectionable request: he asked the court to include in its charge the paragraph quoted above, which said that if defendant's involvement with Bailey had been to "just possess marijuana with no intent to manufacture, distribute or dispense marijuana," he would not be guilty under count six of the indictment. The prosecutor did not contend that this proposal misstated the law. However he objected to including it in the charge, maintaining it was unnecessary. The judge's reaction was essentially the same: he saw no need for the additional statement although he acknowledged that the problem he faced was, "How do I get my message to the jury?"
The charge as delivered included some accurate statements of the law, but also included unexplained readings of the statute and the indictment which contained the troublesome and ambiguous language discussed above.
Thus, at one point the judge correctly told the jury that defendant was "charged with employing a juvenile in a scheme to either distribute, dispense or possess with the intent to distribute a controlled dangerous substance, which is marijuana." And, as he completed his instruction on Count 6 of the indictment he said that in order to find the defendant guilty on that count, the jury had to find that he had employed Bailey in the "possession of a controlled dangerous substance with the intent to distribute it."[3] At other points, however, the judge simply read the potentially ambiguous indictment language without any explanation or qualification, and followed that by reading the statute which contained virtually identical language. And, as noted, the verdict sheet given to the jury incorporated the language of the statute and the indictment.
After the charge had been delivered, defense counsel again argued that the language of the statute and the indictment contained a potential ambiguity and again asked the court to add his proposed paragraph to the jury's instructions. The prosecutor, however, arguing that the jury had already been properly instructed, objected to the proposal and the judge rejected it.

III
In addition to clarifying the potential ambiguity, defendant also claims that the court should have delivered the additional charge in order to focus the jury's attention on the most significant issue in the case: whether defendant was engaged with a minor in a drug distribution scheme, or whether at the time of his arrest he was simply trying to buy some marijuana for his own use.
In State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988), the Court set out a basic and critical proposition: "Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a *1225 fair trial. The trial court has an absolute duty to instruct the jury on the law governing the facts of the case." But the Court went on to note a further, equally important point: a charge must clearly explain how the jury is to apply the legal principles to the facts:
... it is not always enough simply to read the applicable provision of the Criminal Code, define the terminology, and set forth the elements of the crime. An instruction that is appropriate in one case may not be sufficient for another case. Ordinarily, the better practice is to mold the instruction in a manner that explains the law to the jury in the context of the material facts of the case.

[Ibid.]
In this case, the charge provided no concrete guidance for the jury to apply the legal propositions recited by the court. It is striking to realize that in a lengthy and very complex charge there is no point at which the jury was ever told that the critical issue acknowledged as such by both sideswas whether Kevin Pleasant had possession of marijuana on November 30, 1994 simply for his own use, as he claimed, or whether he had it as part of a distribution plot which included Rajhon Bailey, as the State claimed.
And the jury charge was indeed lengthy and complex. It included definitions of the substantive offenses of possession of marijuana; possession of marijuana with intent to distribute; and actual distribution of marijuana. Related to those offenses were instructions concerning the employment of a minor in a "possession with intent" offense; a charge of conspiracy to possess with intent to distribute; a repetition of the substantive offense definitions as each of them applied to the theory of accomplice liability; and finally a weapons charge.
To say that all of this was complicated and difficult to follow would be an understatement. It is, of course, correct that we assume jurors comply with their obligations and follow instructions given them by trial courts. State v. Manley, 54 N.J. 259, 270, 255 A.2d 193 (1969); State v. Compton, 304 N.J.Super. 477, 483, 701 A.2d 468 (App. Div.1997). However, in order to make that assumption a reality, those instructions must be as clear, unambiguous and helpful as courts can make them. They should minimize, and to the extent possible eliminate, the danger that jurors acting in good faith and with the best of intentions might nevertheless misunderstand the instructions given them. That was not done here. It could easily have been done had the court simply provided the explanation submitted by defense counsel,[4] which would have focused the jury's attention on the most critical issue in the case and eliminated potential prejudice from the ambiguity inherent in the language of the statute and the indictment. The failure to do so left the real, practical and significant possibility of misunderstanding and error.

IV
The majority contends that "the jury obviously rejected on credibility grounds testimony presented on the defense case." It also argues that the record "does not reasonably support a conclusion that Bailey possessed the marijuana for his own use, or the assertion that the jury may have misapplied the law." I do not believe that either the record or the overall verdict[5] returned by the jury support those statements. Indeed, what conclusions can be drawn from the overall verdict, I believe, are more consistent with the defendant's version of events than that of the State, a factor which should increase our concern that the jury here might not have *1226 understood the rules under which it was to operate.
Recall that the jury was not able to reach a verdict on the charges of possession of marijuana, possession of marijuana with intent to distribute, or actual distribution of marijuana to Rajhon Foushee. In other words, it did not find Pleasant guilty of those chargesa result which cannot be squared with the majority's claim that the jury accepted the State's version of events. Were that the case, a guilty verdict for possession of marijuana, possession with intent to distribute, and actual distribution to Foushee would have seemed inevitable.
On the other hand the two drug offenses of which the jury did find Pleasant guilty conspiracy to possess marijuana with intent to distribute and employing a juvenile in a drug distribution schemedid not require actual possession of marijuana. If one were to assume (as defendant argues) that the jury believed that defendant could be found guilty of employing a minor in a drug scheme even without an intention to distribute marijuana, then the jury may well have accepted the defendant's version of events but (because of its misunderstanding) found him guilty of the charge involving the minor as well as the conspiracy charge.
I do not contend that we know or can know what was in the mind of the jurors as they reached their inconsistent verdict here. As the Supreme Court noted in State v. Grey, 147 N.J. 4, 10, 685 A.2d 923 (1996),
[i]nconsistent verdicts therefore present a situation where `error' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored.
[Id. at 11-12, 685 A.2d 923, quoting from United States v. Powell, 469 U.S. 57, 65, 105 S.Ct. 471, 476-77, 83 L. Ed.2d 461, 468-69.]
I do suggest, however, that if one attempts to draw any conclusion from the verdict on all of the counts submitted to the jury, the more reasonable conclusion would be that the jury found defendant's version of events more credible than that of the police; that they did not fully grasp the distinction with which we are concerned; that they thus found defendant guilty of involving a minor in a drug transaction and guilty of conspiracy to possess marijuana; but they did not find him guilty of actual possession, possession with intent to distribute or actual distribution.
Those speculations, however, are just that: speculations. The essential point is that the jury was given misleading and inadequate instructions. There is no basis on which one can conclude that the error which I believe was committed was harmless error. "[E]rroneous instructions are almost invariably regarded as prejudicial. Such errors are `poor candidates for rehabilitation under the harmless error philosophy.'" State v. Vick, 117 N.J. 288, 289, 566 A.2d 531 (1989).
Accordingly, I would reverse defendant's conviction under count six, although I would affirm the conviction on counts one and seven.
NOTES
[1] Under a plea bargain entered at the time of sentencing, Pleasant pleaded guilty to the count charging him with possession of CDS (marijuana) with intent to distribute, and to another charge of distributing a CDS contained in a separate indictment. Pleasant was sentenced on each of these convictions to two five-year prison terms, two years without parole eligibility, to run concurrently with the sentence imposed on the convictions after trial. The remaining counts of the indictment were dismissed as part of the plea agreement.
[2] The record refers to Bailey both as Lejon and Rajhon.
[3] Neither Stoville nor Bailey testified at trial.
[4] Although not a part of the statute, see N.J.S.A. 1:1-6; Widdis v. P.E.R.S., 238 N.J.Super. 70, 77 n. 3, 568 A.2d 1227 (App.Div.1990); Fulginiti v. Cape May County Sheriff, 199 N.J.Super. 56, 66 n. 7, 488 A.2d 250 (App.Div.), certif. denied, 102 N.J. 309, 508 A.2d 193 (1985), the caption of this section of the statute is "Manufacturing, distributing or dispensing."
[5] The jury hung on whether Pleasant was the actual possessor or distributor, not on whether Pleasant employed the juvenile in the conspiracy to possess with the intent to distribute.
[1] The statute also covers a drug production facility which has no application here.
[2] This form of verdict sheet, which purports to list all of the element of an offense charged has been disapproved and should not be used. State v. Diaz, 144 N.J. 628, 644, 677 A.2d 1120 (1996).
[3] In other references, the judge told the jury that the State "need only prove" that the defendant knowingly used the juvenile "to violate the law or solicited him to perform the illegal activity described in the indictment," and, "that illegal activity, again, would be to possess marijuana and to possess it with the intent to distribute it and/or to distribute marijuana." The reason for the conjunctive reference to both "possess[ing] marijuana and possess[ing] it with the intent to distribute it" is not clear and might well confuse more than it clarifies.
[4] I do not mean that the language of the proposed charge could not have been improved. Undoubtedly it could have. But it served to point up clearly and unambiguously the key distinction between possession of marijuana for one's own use and possession with intent to distribute. The refusal to deliver the requested charge was not based on any alleged inadequacy or inaccuracy in the language submitted, but rather, as noted, on the grounds that it was unnecessary.
[5] I use the term "overall verdict" as a short hand reference to the jury's verdict and "non-verdict" on all of the counts of the indictment, including its inability to reach a verdict on three counts of the indictment.