**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3133-13T1
             A-0373-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VERNON J. PARKER,

    Defendant-Appellant.

_____

Submitted October 11, 2016 — Decided July 31, 2017

Before Judges Espinosa and Guadagno.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Indictment Nos.
09-03-0830 and 09-04-1087.

Joseph E. Krakora, Public Defender, attorney
for appellant (Mark Zavotsky, Designated
Counsel, on the briefs).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Frank J.
Ducoat, Special Deputy Attorney General/
Acting Assistant Prosecutor, of counsel and
on the briefs).

PER CURIAM

A jury convicted defendant in July 2010, on one count of second-degree endangering the welfare of a child (EWC), <u>N.J.S.A.</u> 2C:24-4(a), pertaining to his stepson, X.R. Pursuant to a plea agreement, defendant then entered guilty pleas to a second count of second-degree EWC pertaining to his stepdaughter, B.R., and to one count of official misconduct, <u>N.J.S.A.</u> 2C:30-2, charged in an unrelated indictment. He was sentenced to three concurrent terms of eight years in accord with the plea agreement. Defendant did not file a timely direct appeal.

In December 2013, he filed a motion for post-conviction relief (PCR) in which he alleged, inter alia, that his three attorneys failed to file a direct appeal on his behalf. Following an evidentiary hearing, the PCR judge denied defendant's petition. Defendant filed an appeal from that denial in March 2014 and a direct appeal in June 2014. We stayed his appeal from the denial of his PCR so it could be heard and decided with his direct appeal. We now affirm both his convictions and the denial of his PCR petition.

In his appeal from his convictions, defendant presents the following arguments for our consideration:

<u>POINT I</u>

DEFENDANT'S DENIAL OF HIS MOTION TO
DISMISS COUNT 21 OF THE INDICTMENT
WAS IN ERROR BECAUSE THE CHARGE OF

ENDANGERING THE WELFARE OF A CHILD FAILED TO GIVE THE DEFENDANT NOTICE OF WHAT HE NEEDED TO DEFEND.

POINT II

THE TRIAL COURT ERRED WHEN IT DENIED TRIAL COUNSEL'S REQUEST TO ADMIT THE DYFS[1] REPORT USED IN REFERENCE TO X.R.'S TESTIMONY INTO EVIDENCE AS A RECORDED RECOLLECTION BECAUSE IT WAS APPARENT THE TESIMONY [SIC] GIVEN WAS UNTRUSTWORTHY.

POINT III

DEFENDANT'S MOTION FOR AQUITTAL [SIC] MADE AFTER THE STATE PRESENTED ITS CASE WAS DENIED IN ERROR.

POINT IV

THE TRIAL JUUDGE [SIC] ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL FOR THE COURT HAVING ALLOWED REPEATED INCULPATORY ALLEGATIONS AGAINST DEFENDANT WITHOUT NOTICE OR A HEARING SO HE MAY BE GIVEN THE OPPORUTNITY [SIC] TO DEFEND AGAINST THEM WITHOUT HAVING TO RELENQUISH HIS FIFTH AMENDMENT RIGHT OF SELF INCRIMINATION.

POINT V

DEFENDANT IS ENTITLED TO WITHDRAW HIS PLEA BECAUSE THE NATURE AND STRENGH [SIC] OF HIS CLAIM OUTWEIGH THE STATE'S INTEREST IN PRESERVING THE PLEA.

---

[1] The Division of Youth and Family Services (DYFS) is now the Division of Child Protection and Permanency.

DEFENDANT IS ENTILTED [SIC] TO HAVE
HIS CONVICTION VACATED BECAUSE THE
SINGLE CHARGE GIVEN TO THE JURY ON
SIX DIFFERENT COUNTS OF ENDANGERING
THE WELFARE OF A CHILD CONFUSED THE
JURY AND INVITED THEM TO INTERCHANGE
THE PROOFS OFFERED BETWEEN THE
COUNTS TO ESTABLISH THE ELEMENTS OF
THE CRIME.

POINT VII

UNDER THE DOCTRINE OF CUMULATIVE
ERROR A NEW TRIAL SHOULD BE ORDERED
PURSUANT TO STATE v. ORECCHIO, 16
N.J. 125, 129 (1954).

Defendant's arguments in Points III and VII lack sufficient merit to warrant discussion. R. 2:11-3(e)(2). His argument in Point V, that he should be permitted to withdraw his guilty plea, is not properly before this court because he has not filed a motion in the trial court to withdraw his guilty plea pursuant to Rule 3:21-1. We conclude further that the remaining arguments in defendant's direct appeal lack merit.

Defendant presents the following arguments in his appeal from the denial of his PCR petition:

POINT I

DEFENDANT WAS DENIED EFFECTIVE
ASSISTANCE OF COUNSEL ENTITLING HIM
TO POST CONVICTION RELIEF.

A. FAILURE TO FILE A DIRECT
APPEAL UPON REQUEST OF DEFENDANT.

4                                                    A-3133-13T1

B.   DEFENDANT WAS EFFECTIVELY
DEPRIVED FROM TESTIFYING FOR HIS OWN
DEFENSE AT TRIAL.

C.   COUNSEL   WAS   INEFFECTIVE
FOR FAILING TO MOVE EXCULPATORY DYFS
REPORTS INTO EVIDENCE AT TRIAL.

Because defendant was provided with the opportunity to pursue a direct appeal, which we now decide, his first allegation of ineffective assistance of counsel is moot.

I.

Indictment No. 09-03-830 charged defendant, a former Newark police officer, with twenty-two counts that alleged abuse of his stepchildren. He was convicted on count twenty-one. The jury acquitted him on counts one, two, four, five and fourteen and could not reach a verdict on counts three, six through thirteen and fifteen through twenty.[2] Defendant's first argument in his direct appeal is that the trial judge erred in failing to dismiss count twenty-one, which alleged that, in August 2007, defendant

> knowingly cause[d] X.R. . . . harm that would make X.R. an abused, abandoned, or neglected child as defined in Title 9 or a child upon whom cruelty has been inflicted while [defendant] had a legal duty or had assumed the responsibility of caring for X.R., to wit: by punching said child in the face while wearing boxing gloves

---

[2]   Count twenty-two was dismissed before trial.

The evidence presented to the grand jury regarding this count can be summarized as follows:

Detective Miranda Mathis, an Essex County Prosecutor's Office detective, testified before the grand jury. During the course of her testimony, she read a written statement X.R. had given to a West Orange Police detective in August 2007. In the statement, X.R., who was fourteen years old, said he was required to explain to his football coach why he had been absent from practice. He stated he was home alone during the day and invited a fourteen-year-old female friend to come to his house. They were sitting on the bed in his mother and stepfather's bedroom, watching a movie when his stepfather got home from work and found them in the bedroom. X.R. stated defendant "got mad as soon as he walked in" and ordered his friend to get out. Defendant called for X.R.'s mother to come to the bedroom and she started screaming at him because his friend was in the house without her permission. X.R.'s mother started hitting his legs with a thin leather belt. X.R. stated,

> Then my stepfather punched me in the face and left a bruise on my right cheek and bottom lip. He then grabbed me around the neck, leaving a mark on my throat. He also punched me in my chest, kicked me in my legs and back. He told me to get out and go to my room and that is where I went until the next morning.

6

When asked if he had any pain at the time of the interview, X.R.'s only complaint was that his back was "a little sore." He declined medical attention. He was not afraid to be in his house but said, "I'm just afraid when my stepfather gets mad and he hits on me."

The grand jury also had before it a series of photographs of X.R. taken by the West Orange Police Department four days after the incident. Detective Mathis described them as depicting "injury to the young man's lip, face, neck and to some degree, back."

No evidence was presented to the grand jury that defendant was wearing boxing gloves at the time he punched X.R. Nonetheless, the indictment returned by the grand jury states he "punch[ed] said child in the face while wearing boxing gloves."

Defendant filed a pretrial motion to dismiss various counts of the indictment, including count twenty-one. He argued the count failed to provide him with notice of "the essential factual ingredients of the offense" and, further, should be dismissed because there was no evidence presented in the grand jury that defendant punched X.R. with a boxing glove. The State countered that the lack of evidence regarding the boxing glove was not a fatal error because "boxing gloves" are not an essential element of the crime charged, and offered to remove the language from the charge at trial. The court denied the motion, finding the count

7

was not "manifestly deficient or palpably defective" because the State was otherwise able to state and provide evidence of the essential elements of EWC under N.J.S.A. 2C:24-4(a) and the factual distinction of being punched with boxing gloves was "gratuitous," and "certainly not an element of the crime."

An abuse of discretion standard applies to our review of a trial court's denial of a motion to dismiss an indictment. State v. Saavedra, 222 N.J. 39, 55 (2015). We find none here.

The essential elements of the offense charged in count twenty-one are:

> 1. That [the victim] was a child.
>
> 2. That defendant knowingly caused the child harm that would make the child abused or neglected;
>
> 3. That defendant knew that such conduct would cause the child harm that would make the child abused or neglected.
>
> 4. That defendant had a legal duty for the care of the child or had assumed responsibility for the care of the child.
>
> [Model Jury Charge (Criminal), "Endangering the Welfare of a Child, Abuse or Neglect (Second Degree)" (2015).]

Defendant does not allege that the State failed to present evidence to support any of these elements before the grand jury. Defendant's sole challenge to this count of the indictment is the

lack of proof regarding the use of a boxing glove. This challenge lacks merit.

A trial court "should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case." State v. Morrison, 188 N.J. 2, 12 (2006). Dismissing an indictment is appropriate only "when it is 'manifestly deficient or palpably defective,' and then only when the grounds for the dismissal can be described as the 'clearest and plainest.'" State v. Mason, 355 N.J. Super. 296, 298 (App. Div. 2002) (citations omitted).

The count itself "identif[ies] and explain[s] the criminal offense so that the accused may prepare an adequate defense." State v. Branch, 155 N.J. 317, 324 (1998). The State alleged the essential elements of the offense charged and presented adequate evidence of each element. The reference to the boxing gloves in the count was mere surplusage; the failure to present evidence to support that allegation does not constitute grounds for dismissal. See State v. Ogar, 229 N.J. Super. 459, 471 (App. Div. 1989).

## II.

At trial, X.R. stated he was four or five years old when defendant began to live with his mother, sister and him. He testified that when he got into trouble, defendant would tell X.R. to strip down and take off his clothes and then proceed to hit

X.R. with his work belt, leaving marks on his legs, back and sometimes X.R.'s arms when he tried to "block the hits." X.R. stated this happened on more than one occasion, whenever he got in trouble in school. Defendant told X.R. not to tell anyone about how he had received the marks. X.R. stated he refrained from hanging out with his friends or seeing his biological father when he had bruises from being hit and lacked a good excuse for explaining them. He never confided in his father about being hit because he had a temper and X.R. was "scared" about "how everything will play out in the end." As X.R. got older, defendant stopped using a belt to hit him and used an open hand or clenched fist.

Describing the August 2007 incident when defendant walked in on him with a female friend, X.R. testified he and the girl "almost had sexual intercourse but . . . didn't get to that point." He stated defendant started yelling and hit him. Defendant called X.R.'s mother upstairs and, after the girl left, defendant started to hit X.R. again. According to X.R., defendant put on "UFC gloves that had a lot of padding around the knuckles" and struck him repeatedly. When the beating stopped, X.R.'s face was swollen; he "had a busted lip" and "a mark around [his] neck." X.R. said the mark around his neck was caused when defendant tried "to choke [him] with [his] shirt, jacking up on [his] shirt and it pushing up on [his] neck." His appearance did not improve the following

10

day.  Defendant told him to stay home and not go to football practice.

X.R. returned to football practice the third day after the incident.  When asked to account for his absence from practice, X.R. told his coach "the whole story."  This was the first time he had ever told anyone outside his home the truth about what happened in his house.

The next day, two detectives from the West Orange Police Department contacted X.R. and brought him to the police station, where he gave a statement and a detective took photographs of him.  X.R. had not had an opportunity to review the statement.  But he testified he "told em' what happened in the household . . . when it took place; how it took place," and that it was a truthful account.

X.R. testified that, on occasion, his mother communicated instructions to him from defendant on how to explain his injuries.  The assistant prosecutor asked him if there was any discussion regarding the August 2007 incident "about what version of facts to give to the Division of Youth and Family Services."  When X.R. answered, "[y]es" and began to explain, "Well, I was told from my mother that was from him, to say that I tried to --," defense counsel objected.  Following a sidebar discussion, the trial judge instructed the jury that the questions and answers regarding what

11                                          A-3133-13T1

X.R.'s mother told him to say were stricken as hearsay and were not to be considered by the jury.

On cross-examination, X.R. was asked about a statement he made to the police — that the August 2007 incident was the only time he received a bruise from defendant. He explained he said that "because [he] knew DYFS would get involved" and admitted that was a lie. Counsel did not question X.R. about the account he gave to DYFS.

Defense counsel later sought to admit the DYFS report of the caseworker's interview with X.R. following the August 2007 incident, marked D-2, and another DYFS report, D-3, into evidence. Counsel contended, erroneously, that D-2 had been used to impeach X.R., and that the documents were admissible "to rebut any claim of recent fabrication." The trial court ruled that neither document was admissible.

During deliberations, the jury sent the court a note, asking for a read-back of X.R.'s testimony and to see the DYFS "report taken at the time of [X.R.]'s injury related to Count 21." The trial judge clarified that the jury wanted a readback of X.R.'s entire testimony and advised the jury they would be given that. The trial judge denied the request for the DYFS report, explaining to the jury that the report was not admitted into evidence but

that the jury would have any testimony about the DYFS report in the readback.

III.

In Point II of defendant's arguments in his direct appeal, defendant argues the trial court erred in denying the admission of the DYFS records that were marked for identification only at trial. We disagree.

He first contends the reports were admissible as a past recollection recorded pursuant to N.J.R.E. 803(c)(5). This argument is entirely lacking in merit. For this hearsay exception to apply, the statement must "concern[] a matter about which the witness is unable to testify fully and accurately because of insufficient present recollection." N.J.R.E. 803(c)(5). The record offers no support for the premise that X.R. had "insufficient present recollection" to allow him "to testify fully and accurately." Ibid.

Defendant also argues the reports should have been admitted pursuant to N.J.R.E. 612 as a writing used to refresh a witness's memory. This argument is equally unavailing because the document was not used to refresh X.R.'s memory and, again, the record fails to show his memory required refreshing.

A trial court abuses its discretion when it applies an erroneous legal standard in making a decision, and when it makes

13

an evidentiary ruling that is not grounded on reasonable, credible evidence in the record.  See State v. R.D., 169 N.J. 551, 559 (2001).  There was no abuse of discretion here.

## IV.

After the State rested, defendant made a motion for a mistrial on the ground that there had been cumulative error in the trial. Defendant argues the trial judge erred in denying the motion. We disagree.[3]

"A mistrial is an extraordinary remedy that should be used only to prevent a manifest injustice." State v. Goodman, 415 N.J. Super. 210, 234 (App. Div. 2010), certif. denied, 205 N.J. 78 (2011).  We apply a deferential standard in reviewing a trial judge's denial of a motion for a mistrial, and will not disturb a trial court's ruling "absent an abuse of discretion that results in a manifest injustice."  State v. Jackson, 211 N.J. 394, 407 (2012) (quoting State v. Harvey, 151 N.J. 117, 205 (1997), cert. denied, 528 U.S. 1085, 120 S. Ct. 811, 145 L. Ed. 2d 683 (2000)).

Counsel argued there had been an "aggregate of errors," specifically the introduction of statements attributed to

---

[3]  Although defendant's point heading alleges error in the trial judge's denial of his motion for a mistrial, his argument also contends his motion for a new trial — which was made to preserve an appellate challenge to the jury verdict — should have been granted.  To the extent this issue is raised, it also lacks merit.

defendant during the direct examination of X.R. and his sister, B.R., without a hearing pursuant to N.J.R.E. 104(c) to determine "the evidentiary quality of the statements." The trial judge noted he had ruled on objections to such statements when made during the trial and rejected the argument that a R. 104(c) hearing was required for every statement attributed to a defendant.

Defendant argues that the testimony of X.R. and B.R. included statements attributable to him that characterized him as a bad person and were akin to each, unfairly bolstering the credibility of each other's testimony. The case for such prejudice is substantially undermined by the fact the jury did not convict defendant of any charge that he abused B.R.

In his brief, defendant identifies five instances in which statements were attributable to defendant. He asserts his "counsel objected to a number of statements, and her objections were sustained" but he "could not overcome the prejudicial nature of the repetitive inadmissible statements made against him." We note that defendant has not identified any part of the record where a Rule 104(c) hearing was requested or any adverse evidentiary ruling on these objections that he contends was error. In at least some instances, the trial judge gave curative instructions to the jury. Defendant has not contended that any additional curative action was requested or required.

Instead, he argues the statements "were not tested by notice or a hearing and were therefore improperly used against" him. As to "notice," there is no contention that the State failed to honor its discovery obligations here or that defendant was surprised by any of the statements attributed to him.

Defendant has not identified what about the statements should have been tested at a hearing. Ordinarily, a <u>Rule</u> 104(c) hearing is conducted to make the preliminary legal determination as to whether a defendant's statement to police is admissible. <u>See, e.g.</u>, <u>State v. W.B.</u>, 205 <u>N.J.</u> 588, 602 (2011). Because <u>N.J.R.E.</u> 104(c)

> is only operative "[w]here by virtue of any rule of law a judge is required in a criminal action to make a preliminary determination as to the admissibility of a statement by the defendant,". . . 104(c) hearings will be required in such cases only where some "rule of law" requires a preliminary finding by the judge.
>
> [Biunno, Weissbard & Zegas, <u>Current N.J. Rules of Evidence</u>, comment 6 on <u>N.J.R.E.</u> 803(b)(6) (2017).]

No rule of law has been cited that required a preliminary determination by the trial judge as to the admissibility of the statements complained of on appeal.

In sum, defendant argues that, notwithstanding rulings and cautionary instructions given by the trial judge following

16

objections that are not challenged on appeal, the trial judge committed reversible error by not conducting a Rule 104(c) hearing. The trial judge's evidentiary rulings regarding the statements in question are reviewed for abuse of discretion, R.D., supra, 169 N.J. at 559, and we find none.

## V.

In Point VI of his direct appeal brief, defendant challenges the jury instruction, arguing the trial judge committed reversible error. We disagree.

Counts one, two, eighteen, nineteen, twenty and twenty-one each charged defendant with second-degree EWC. Defense counsel objected "to clumping all of the counts" that alleged corporal punishment, arguing that the grouping of the counts might lead the jury to believe "they must be identical in their results" and invited "the jury to use the proofs of one in determining a separate offense charged in a different count."

In denying defendant's request, the trial judge stated, "The only thing that's being grouped together is that . . . the law applicable to these six charges is identical." The trial judge declined to "read the identical charge six times for each and every separate count," and stated he would make it clear that the jury needed to consider each count separately. The trial judge's final charge to the jury on the six EWC counts stated:

It is alleged that on various dates between 1998 through 2007, [defendant] did knowingly cause [B.R.] . . . and [X.R.] . . . harm that would make [B.R.] and [X.R.] an abused child as defined in Title 9, or a child upon whom cruelty has been inflicted while [defendant] had a legal duty, or had assumed the responsibility of caring for [B.R.] and [X.R.].

Each count represents the abuse of [B.R.] and [X.R.] individually, as well as the harm inflicted by defendant on said child. Counts 1 and 2 allege that the defendant caused [B.R.] and [X.R.] to strip naked and beat them with a belt; while Counts 18 through 21 allege that defendant caused [B.R.] and [X.R.] harm by punching, choking, slapping and other acts of physical abuse.

The trial judge also stated to the jury:

There are 21 offenses charged in the indictment. They are separate offenses by separate counts in the indictment. In your determination of whether the [S]tate has proven the defendant guilty of the crimes charged in the indictment beyond a reasonable doubt, the defendant is entitled to have each count considered separately by the evidence which is relevant and material to that particular charge, based on the law as I give it to you.

The trial judge then provided instructions to the jury on the law governing the second-degree endangering the welfare of a child counts, including reading the statutory language, explaining the elements the State must prove to support a guilty verdict, providing any necessary definitions, and identifying any relevant exceptions the jury may consider. Finally, the trial judge

18

instructed the jury that the verdict "must be unanimous," meaning that all of the jurors "must agree if a defendant is guilty or not guilty on each charge."

Generally, "a defendant is not 'entitled to have the jury instructed in his own words.'" State v. Piqueiras, 344 N.J. Super. 297, 317 (App. Div. 2001) (quoting State v. Pleasant, 313 N.J. Super. 325, 333 (App. Div. 1998), aff'd o.b., 158 N.J. 149 (1999), certif. denied, 171 N.J. 337 (2002)).

> A party is entitled only to a charge that is accurate and that does not, on the whole, contain prejudicial error. As such, the test is to examine the charge in its entirety, to ascertain whether it is either ambiguous and misleading or fairly sets forth the controlling legal principles relevant to the facts of the case.
>
> [State v. LaBrutto, 114 N.J. 187, 204 (1989) (citation omitted).]

The jury instructions here accurately set forth the controlling legal principles and contained no prejudicial error. Moreover, because defendant was only convicted on one count, the potential for prejudice articulated by defense counsel plainly was not realized. Defendant's challenge to the jury charge therefore provides no grounds for reversal.

## VI.

We next turn to defendant's appeal from the denial of his PCR petition. He argues he was denied the effective assistance of

19

counsel because "he was unduly coerced into foregoing his constitutional right to testify on his behalf" and "for failing to move exculpatory DYFS reports into evidence at trial." We are not persuaded by either of these arguments.

To prevail on a claim of ineffective assistance of counsel, defendant must meet the two-prong test of establishing both that: (1) "counsel's performance was deficient" and he or she made errors so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068, 80 L. Ed. 2d 674, 693, 698 (1984); State v. Fritz, 105 N.J. 42, 52 (1987).

### A.

The PCR judge conducted an evidentiary hearing regarding defendant's claim that he was coerced into refraining from testifying at his trial.

The record from defendant's trial revealed the trial judge engaged in a thorough colloquy with defendant after defense counsel advised the court that defendant had decided not to testify. The

20

trial judge explained it was defendant's "absolute right to testify, if [he] want[ed], and then . . . [he] would naturally be subjected to cross-examination." Defendant replied, "I understand." When the trial judge asked defendant, "And it's your decision not to testify?," defendant replied, "That's correct." The judge also reviewed the options regarding an instruction to the jury if he chose not to testify and asked defendant if he had discussed those options with counsel. Defendant stated he had done so and asked the trial judge to instruct the jury regarding his constitutional right to remain silent.

Defendant testified at the PCR hearing that he wanted to testify at trial regarding his lack of a criminal record but was advised against doing so by his trial counsel. He stated she told him it was "better to be thought not smart than proven not smart" and she coerced him to not testify. Specifically, he stated it was his understanding that his trial counsel refused to question him if he chose to testify.

Defendant's trial counsel testified defendant never told her that he wanted to testify at trial. She said she reviewed with him his right to testify, the positives and negatives of testifying and the possible instructions that could be given to the jury at defendant's election.

21                                                    A-3133-13T1

The PCR judge found defendant's trial counsel "credible as to her testimony regarding [defendant's] election not to testify" and rejected defendant's claim he was coerced into refraining from testifying. The PCR judge's evaluation of the witness's credibility is entitled to our deference, State v. Pierre, 223 N.J. 560, 576 (2015), and her conclusion that defendant was not coerced has ample support in the record.

B.

Defendant describes the DYFS report[4] requested by the jury in deliberations as "exculpatory to the foundation of the single endangering charge the defendant was convicted of." Defendant does not elaborate as to the exculpatory value of the DYFS report and this characterization appears to be a gross mischaracterization. The PCR judge found the report was not clearly exculpatory and constituted inadmissible hearsay, and concluded the decision not to move the record into evidence was a matter of sound trial strategy. As we have concluded in our consideration of defendant's direct appeal, defendant's argument to the contrary lacks merit.

Defendant's convictions and the denial of his PCR petition are affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Only one DYFS report was requested by the jury.

A-3133-13T1